AMERICAN SODA FOUNTAIN CO. et al. v. SAMPLE.

(Circuit Court of Appeals, Third Circuit.   May 16, 1904.)

No. 20.

1. PATENTS—NOVELTY—SODA FOUNTAIN APPARATUS.

The Sample patent, No. 498,962, for a draft tube for soda fountains, claims 1 and 5, the special feature of which is the subdivision of a tube extending from the valve into branches so as to reduce the pressure when it is desired to use the soft stream in filling a glass, are void for lack of patentable novelty in view of the prior art, and especially of the Clark patent, No. 358;650, issued in 1887, and the Fergus patent of 1872.

2. SAME—PRESUMPTION FROM GRANT.

The fact that the file wrapper discloses that a patent was granted as applied for, without any references, does not add force to the presumption of novelty arising from the grant, but rather the contrary, where there were prior patents for devices in the same art, which are obviously closely analogous to that described in the application.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 126 Fed. 760.

Joshua Pusey, for appellants.
W. G. Henderson, for appellee.

Before ACHESON and GRAY, Circuit Judges, and KIRKPATRICK, District Judge.

GRAY, Circuit Judge.   This suit was brought in the Circuit Court of the United States, for the Eastern District of Pennsylvania, by George W. Sample, the appellee and complainant below, for the infringement of letters patent of the United States, No. 498,962, issued to said Sample June 6, 1893, for a draft tube for soda water fountains. The bill of complaint is in the usual form, and charges infringement of said letters patent by the defendants, the American Soda Fountain Company and Alfred H. Lippincott, agent and general manager of said company.   The answer is in the usual form, and denies infringement. It avers that, in view of certain prior patents and prior uses by others, the said patent is invalid, and that, in view of the well-known state of the art, at and before the date of the alleged invention of complainant, the same did not involve invention, and was and is without patentable novelty.   The court below adjudged the first and fifth claims of the patent in suit (these being the only claims defendants were charged with infringing) to be valid, and that defendants had infringed said claims.   From this decree, the present appeal is taken.

The patentee thus describes in the specifications of his patent his alleged invention:

"My invention relates to draft tubes for soda water dispensing apparatus, and has for its object to provide an improved draft tube wherein the valve which controls the discharge of the soda water into the glass or tumbler is provided with one passage or channel for the discharge of the water in a forcible stream or jet for the purpose of mixing the syrup and the water, and with a plurality of passages or channels for the passage of separate streams

130 F.—10

or jets of the water to be mixed with the syrup and served to the user, the said plurality of passages or channels other than the channel for the jet to mix the water and syrup being connected with a common inlet port therefor, and the passage or channel for the mixing stream or jet being connected with another port, so that while there will be at least three passages or channels within the body of the valve for the passage of the water there will be only two inlet ports for the series of channels or passages whereby is obtained a better distribution of the soda water with a construction requiring less labor in its operation, and in which loose or leaking joints are not so liable to occur.

It further consists in providing the two channels or passages through which passes the water to mix with the syrup with a series of perforations extending outwardly in an upward direction so that the water will be projected upwardly in a series of small jets and be then directed by a conical nozzle to the glass in a copious but in a quiet or gentle flow so that the glass can be filled in less time than otherwise and the overflow of the glass guarded against.

It further consists in means for readily adjusting the valve against its seat so as to easily and quickly take up any wear as it occurs and thus insure a close joint between the valve and its seat."

The first and fifth claims of the patent (the only ones here involved) are as follows:

"1. In a soda water draft tube having a port for the inlet of the water, a valve formed with separate ports adapted to be alternately brought into communication with said inlet port and formed with a passage or channel leading from one of said ports for delivering the water in a forcible stream or jet and with a plurality of passages or channels leading from said other port adapted to divide the water received through said port and deliver it in independent streams or jets, substantially as and for the purposes described."

"5. In a soda water draft tube, the combination with a valve seat portion formed with an inlet for the water and with a chambered portion to receive the valve, of a valve fitted in said chambered portion and formed with separate ports adapted to be alternately brought into communication with said inlet port, and having a passage or channel leading from one of said ports and a plurality of passages or channels leading from the other port and adapted to divide the water received from said port into separate flows, means for adjusting and for holding said valve against its seat, and means for operating said valve, substantially as and for the purposes described."

According to the evidence, it is desirable, in the class of devices to which the patent in suit relates, to provide a valve mechanism whereby a single "sharp" or forcible stream may be first directed into the tumbler or receptacle, for the purpose of thoroughly mixing the syrup and soda water. When this is done, and before the glass is filled, it is also desirable that a "soft" or diffused stream, or what is known as "flat" soda water, may be drawn into the glass or receptacle in such manner that the danger of splashing or overflowing the glass will be avoided. This is in general accomplished by conveying the air-charged soda water through a straight tube of small diameter, the water being discharged without interruption in a "sharp" strong stream into the receptacle, the "soft" or diffused stream being produced by conveying the water through the port into a tube which immediately branches into two tubes of equal or greater diameter, from which the water is discharged against the sides of the nozzle through which it passes softly into the glass. That this is the main and controlling idea embodied in both claims (1 and 5) of the patent in suit (the fifth claim only differing from the first in that it includes "means for adjusting and for holding said valve against the seat"), is clearly set forth in the testimony of complainant's expert. He says:

"This claim" (referring to claim 1) "covers or describes a valve formed with separate ports either of which is adapted to be brought into communication with an inlet port and one of which valve ports opens into a single passage or channel for delivering a forcible stream of 'sharp' soda, and the other of which valve ports communicates with a plurality of passages which will divide the fluid entering the inlet port of the valve into several independent streams or jets, for the purpose of delivering 'flat' soda. I understand, therefore, the leading or essentially novel feature of the patent in suit to be a valve element having two ports, one of which leads into a single passage or channel and the other of which communicates with a plurality of passages or channels branching out from a single port, and either of which valve ports may be brought into communication with an inlet, at the pleasure of the attendant, by turning a single part."

• "This claim" (referring to claim 5) "describes, but in slightly more specific terms, the same invention as is described in claim 1, with the addition to the combination of claim 1 of adjustable means of holding the movable portion of the valve against the valve seat and means for operating the valve."

So the court below, quoting this testimony of complainant's expert, says:

"Indeed, it seems to me, that one might safely declare the distinguishing feature of the invention to be the plurality of passage-ways by which the coarse stream is formed."

This fairly states the question now before us, namely, whether a plurality of passages for the delivery of the coarse stream was new, or possessed patentable novelty in view of the prior art. The court further says:

"If a broad construction is given to the claims in suit, they are probably anticipated by the two patents issued to W. P. Clark, No. 138,615, granted May 6, 1873, and No. 358,650, granted March 1, 1887. Both of these patents show devices for reducing the pressure of the gas upon the 'soft' or 'coarse' stream, that differ from the complainant's device only as an orifice differs from an enclosed passage way or pipe."

The learned judge, however, notwithstanding the "Clark" patents, felt compelled to sustain the novelty of complainant's devices, saying:

"I am not insensible to the strength of the defendant's argument that the complainant's pipes or passageways are mere extensions, or prolongations, of the orifices of the prior art, and are therefore either anticipated by the Clark patents, or do not disclose patentable invention; but I am bound to save the patent if this be reasonably possible, and I think such a result may fairly be reached by a narrow construction, which restricts the complainant to his particular device, but leaves him with a visible distinction from the prior art. and a distinction that I cannot say is devoid of patentable invention. My principal reasons for holding the invention to be patentable are the presumption of novelty arising from the grant, and the fact that the defendants think so well of the device that they use it themselves, although they control the Clark patents and can, therefore, employ the orifices freely, if these produce as good results."

It is precisely upon this point of the relation of the device for producing a "coarse" or a "soft" stream, set forth in the "Clark" patents, to that of the device for the same purpose in the patent in suit, that we are compelled to differ from the learned judge of the court below. The obvious means for diminishing the force of a stream under a given pressure from a given source of supply, is to enlarge the orifice and conduit through which it is delivered. In valve mechanisms of the general character of those of the patent in suit, used for the drawing of soda

water, the size of the ports or orifices through which the water passes into the passageways for delivering the "sharp" and "soft" streams respectively, remains the same. The size or diameter, therefore, of the tube or passageway whose upper open end registers and connects with said orifice, must be the same for both the "sharp" and "soft" streams. To branch the passageway for the "soft" stream, either immediately after it leaves the orifice, or at a greater or less distance therefrom, into two or a plurality of passage ways, each of which is of capacity equal to or greater than the single receiving passageway, would obviously diminish and diffuse the force of the stream ultimately delivered at the end of the nozzle into the receiving vessel. It is to be remarked, however, that the patent in suit contains no such statement or requirement as that the cross sectional area of the two passageways combined shall be greater than that of the inlet port. Whether such an obvious device for diminishing the force of the stream involved patentable invention, or required more than ordinary mechanical skill to contrive it, need not now be passed upon, as we are of opinion that the constructions shown in the "Clark" patents referred to clearly involve the principle of the device of the patent in suit, and accomplish the same purpose by similar means.

In the devices of the "Clark" suit, the "coarse" stream is conveyed from the inlet port of the valve through a single tube until it is intersected by a short tube at right angles thereto, through which the water is discharged on the one side and the other, against the sides of the nozzle, or into or against the sides of some diffusing receptacle not material to be here considered. Thus:

In the device of the patent in suit, as well as in the defendant's device, the "coarse" stream goes through the port into a passageway or conduit, which at a short distance from the port branches into two passageways, which make an acute angle with each other, and from the ends of which the water is delivered. Thus:

It is plain to us, that the principle upon which the force of the stream is diminished and diffused, is the same in both devices, and that the means of accomplishing that purpose are practically identical. If we could conceive the branches of the patent in suit to be raised up until they stood at right angles to the single conduit from which they branch, we would have precisely the form of the "Clark" device, except as regards the length of the branches. The appellee contends, however, and the court below seems to have adopted the contention, that the transverse passageway in the "Clark" device does not constitute two passageways, but two orifices or holes in the end of the single passageway. This conception may be due, however, to the shortness of the intersecting passageway, its ends as portrayed in the "Clark" patents extending but a very short distance from the single passageway, owing probably to the confined space in which they are placed. This difference, however, is not a difference in the essential feature which characterizes both devices.

There is still another patent, of a date earlier than either of the "Clark" patents, to wit, the "Fergus" patent, No. 124,892, issued March 26, 1872, which discloses still more distinctly the principle of the device of the patent in suit, which we have been discussing, to wit, a plurality of passages or channels leading from a port or ports other than that through which the "sharp" stream passes. In this device, there are three ports, one for the "sharp" stream and two connecting with passageways for the "coarse" or "soft" stream. Both of these latter passageways terminate in two transverse conduits, instead of one, as in the "Clark" patents, giving three distinct branches, instead of two. The elements of the first claim of the patent in suit cover exactly the "Fergus" patent. In it, we have a forcible stream or jet branching into a "plurality of passages or channels," "adapted to divide the water received through the port and deliver it in independent streams or jets."

It is true, that the device of the patent in suit was distinguished from all other devices by certain details, such as the closure of the bottom of the two branch pipes or passageways, and their perforation for some distance from the end, by upwardly inclining apertures, which deliver the soda water against the walls of the encasing nozzle. This detail may have contributed to what appellee claims to have been the greater speed and general efficiency with which glasses were filled at the nozzle. That, however, is a matter of degree, which will not of itself render a device patentable. If, however, it were an essential feature of the patent in suit, it neverthelesss clearly appears that it is not reproduced in the defendant's construction, the branch pipes in which are open at the ends and deliver their streams against the bottom and sides of a cup or basin, over the rim of which the water flows through the encasing nozzle.

We do not agree with the contention, that the fact that the file wrapper discloses the patent to have been granted as first applied for, without any references, adds any force to the presumption of novelty arising from the grant. On the contrary, we think the force of that presumption is much diminished, if not destroyed, by the lack of any reference by the Examiner to, or consideration of, the "Clark" patents. It does not seem likely that an expert examiner would pass them by,

without notice or consideration, if they had been called to his attention. We feel compelled, therefore, to the conclusion, that the first and fifth claims of the patent in suit are invalid for want of patentable novelty.

The judgment below is therefore reversed, with directions to enter a decree in conformity with this opinion.