## PAGE STEEL & WIRE CO. v. SMITH BROS. HARDWARE CO. et al.

### No. 6122.

Circuit Court of Appeals, Sixth Circuit.
April 6, 1933.

Frederick S. Duncan, of New York City, for appellant.

Wm. R. Wood, of Cincinnati, Ohio, for appellees.

Before MOORMAN, HICKENLOOPER, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

The appeal involves validity of patent No. 1,643,123, issued to appellant September 20, 1927, on the application of William Thomas Kyle, filed December 3, 1924, for a traffic protective structure. It is conceded that, if the patent is valid, the defendants infringed. The defenses, anticipation, non-invention, and misrepresentation as to claim 7, were sustained below, and the plaintiff there appeals.

The fences that one sees at dangerous spots along the highway are designated by the patentee and his assignee, the plaintiff, as highway guards or barriers. It is contended that the highway barrier art is to be distinguished from the fencing art by the difference in the needs to be served; that prior to the Kyle invention highway barriers had been based upon the idea of rigidity and resistance to the impact of vehicles; that for years the inadequacy of wooden and metal barriers had been recognized by highway commissions and their engineers, but the only effort toward improvement had been to make the barriers heavier and still more rigid. The Kyle invention, it is claimed, had a revolutionary effect upon this art. Kyle substituted for the heavy, rigid barriers then standard a narrow and comparatively light ribbon of woven wire mesh, which serves to stop heavy vehicles by yielding under impact, and thus gradually absorbing the shock. It was only after a series of special tests and practical demonstrations that the skepticism of highway commissions in a number of states was overcome, with the result that the Kyle type of barrier was adopted in many states and in Canada, and a number of wire fabric companies started manufacture under licenses from the plaintiff. A large industry is claimed to have been erected upon the basis of the invention, and a radical change effected in highway guard construction, with consequent saving of life and property.

The purpose of the Kyle invention, as stated in the specification, is to provide a semi-rigid metal barrier of sufficient strength to resist the impact of an automobile, but yielding to the extent of not suffering demolition even under heavy impact, and of absorbing the shock of collision by the gradual stretching of the material constituting the barrier. The structure disclosed is a barrier of foraminous or open mesh metal. In its preferred form it is of diamond mesh wire netting, approximately two feet in vertical width, mounted on its supports with considerable space, from a foot to fifteen inches, between its lower edge and the ground; that being at a height corresponding approximately to that of the hub of the average automobile. The posts upon which this open mesh metal barrier is mounted are approx-

imately ten feet apart, and are located along the immediate edge of the highway. The barrier so operates that, when struck by an automobile, the meshes of the fabric tend to lengthen longitudinally and flatten vertically, causing the fabric as a whole to resistingly stretch lengthwise and narrow transversely. Such deformation, however, takes place gradually, with accompanying resistance, bringing the vehicle gradually to a stop over an appreciable period of time. This stretching of the fabric cushions the impact and absorbs the shock. The Kyle barrier therefore operates upon radically different principles from other known highway barriers. In case of impact of a heavy or rapidly moving automobile with a wooden or metal rail barrier, or with a stone wall, there is no resistant yielding, and the energy of the moving car is converted into shock injurious to the vehicle and its occupants. The virtue in having a narrow strip of mesh mounted with its lower edge raised from the ground is that the wheels of the automobile will not tend to ride upon and over the barrier. The stretching fabric therefore engages the chassis or body of the vehicle, insuring its gradual but complete stopping. The narrowness of the ribbon also prevents its riding over the chassis and engaging the automobile top, with resulting injury to the car and occupants.

While preferring wire mesh fabric of the type known in the wire fabric art for many years as chain link or diamond mesh wire netting, Kyle claimed the benefit of the use of other forms of metal mesh fabric, and disclaimed many forms of metal fabric and wire mesh fencing as incapable of being used in the manner specified in the patent. It is unnecessary to recite the claims. It may be conceded that they are in sufficient response to the description and specification, except that claim 7 may be said to cover all flexible material for highway guards formed of interwoven flexible elements arranged obliquely, longitudinally adapted to permit permanent distortion, and of suitable width for the purpose disclosed in the specification.

Wire mesh fabric of the kind known as chain link was a well-known commercial article for many years prior to Kyle. It was manufactured and sold by the plaintiff and its licensees for fencing and "other protective purposes." The defendant therefore contends that all that Kyle did was to select from a variety of metal fencings a particular wire mesh fabric, produce it in long strips of two feet or two feet six inches in width, mount it on posts above the edge of the highway about a foot from the ground, and call it a highway barrier instead of a fence, that the new properties exhibited by the material in its new environment were inherent therein, and that the new results claimed to have been obtained were different only in degree from tendencies always present in chain link fences.

Whether we regard the highway barrier art as a new art developing from the necessity of preventing rapidly moving automobiles from catapulting into dangerous places, or whether we regard it as but a specialized development of the very ancient art of fencing, it becomes necessary to spell out that which is new in Kyle in order to determine his advance over old practice, and decide whether such advance denoted inventive thought. Viewed in the light most favorable to the claim of validity, what Kyle did was to take a well-known fence material, produce it in a width not previously marketed, place it in a somewhat different environment, and mount it a specified distance from the ground. Were we to concede that all of these steps were new, we might still have some difficulty in sensing invention in Kyle.

But analysis does not sustain the claim of novelty, even in the steps relied upon, conceding for the moment that they may be construed as elements in an article of manufacture rather than as steps in a method. The highway barrier art, even though distinct, is necessarily closely related to the fencing art, and unquestionably evolved from it. In a sense at least a fence is a barrier, and a barrier is usually a fence. We have said before that, where an art is a specialized development of an older art, the offspring is entitled by right of descent to the previously disclosed useful characteristics of the ancestral estate. Dunham Co. v. Cobb (C. C. A.) 19 F.(2d) 328. There is no substantial change of environment achieved by moving a chain link fence from the line of the farm to the edge of the highway. Undoubtedly in many places the farm fence is already adjacent to the traveled portion of the road. In any event mere change in environment is not patentable unless invention may be found in the concept of the adaptation. Willett Mfg. Co. v. Root Spring Scraper Co., 55 F.(2d) 858 (C. C. A. 6).

But it is claimed that chain link mesh fabric was not commercially produced in ribbons as narrow as two feet or two feet six inches prior to Kyle. Yet such widths were in contemplation. The machines purchased by the defendant, and manufactured under a

patent to Schmid, No. 889,815, long since expired, are capable of producing woven wire fence fabric of width as narrow as one and a half to two feet. No ingenuity is required to cut five foot fabric into two, or six foot fabric into three, strips, as practiced by the plaintiff. Moreover, two to two and a half feet is the conventional width of the barriers preceding Kyle, constructed of planking, iron pipe, or planking and cable. There was no novelty in constructing a barrier of two foot width; it was standard practice. Besides, mere change in dimensions is not invention. Steel Wheel Corporation v. B. F. Goodrich Rubber Co., 42 F.(2d) 406 (C. C. A. 6). Nor was there novelty in raising the barrier a foot or fifteen inches from the ground. This also was conventional in rigid barriers, excepting only those of the solid type. The original purpose in having the barrier raised an appreciable distance from the ground was to prevent the accumulation of ice and snow along the edge of the highway. Whatever the purpose of the patentee, in this respect he followed the usual practice.

Finally there is the wire highway guard erected by the Iowa state highway commission in August, 1921. This guard was made of twenty-six inch hog fencing, employed in the usual way by stapling to stout posts along the highway, and the lower margin of the mesh was thirteen inches above the ground. While it may be true that the Iowa fencing was originally intended to mark and protect unfinished shoulders of the road, the record sufficiently establishes the fact that it was continued for a long time as a highway guard, and more or less effectively operated as such. While we do not regard the Iowa practice as complete anticipation, inasmuch as so-called hog fencing contains horizontal strands which do not permit such extension after impact as does chain link fencing, yet that it did have appreciable extensibility is demonstrated by plaintiff's own diagram. Moreover it was a narrow ribbon of wire, within the disclosure of the patent, and its lower margin was sufficiently above the ground to respond to the Kyle claims. The Iowa practice so greatly narrows the forward step taken by Kyle that his advance over prior practice is reduced to the mere substitution of chain link diamond mesh fencing, a standard commercial product, for the material used by the Iowa commission.

Considering Kyle in its most favorable aspect, it falls far short of denoting invention. At best Kyle but found a new use for an old article, and his disclosure presents a typical instance of that double use which will not support a patent. Weir Frog Company v. Porter, 206 F. 670, 675 (C. C. A. 6); Grand Rapids Refrigerator Co. v. Stevens, 27 F.(2d) 243 (C. C. A. 6). Granted that Kyle discovered a new use for extensible mesh fabric, the language of Judge Grosscup in Voightmann v. Perkinson (C. C. A.) 138 F. 56, 57, quoted by us with approval in the Weir Frog Case, is peculiarly applicable: "Concept, alone, is not patentable. Concept must be accompanied by mechanical embodiment; and, as the law now stands, the mechanical embodiment, to make the invention patentable, must itself be unanticipated." Or, as was said in Bullock Electric Mfg. Company v. General Electric Company, 162 F. 28, 36 (C. C. A. 3), also referred to in the Weir Frog Case: "But this function was dormant in the [device of the prior art]. * * * Surely invention cannot be claimed in the appropriation of an old device, by reason of the unthought of and undisclosed function in question." To use Judge Denison's own language in the Weir Frog Case: "But when it was seen that the means employed were old, even in substantially the same form and substantially the same association, each was held to be not a new result, but only a new use of an old device—a newly observed or discovered function of a well-known thing." The opinion of this court in Lakewood Engineering Company v. Walker, 23 F.(2d) 623, is strongly urged upon us to support the validity of the Kyle patent. In that case a new use was discovered for an old device in a remote and wholly unrelated art, and the patent disclosure presented such difference in size, strength, and weight, and in purpose and manner of use, that no effective suggestion was thought to have been furnished by the old device of either the means or the result which the patentee accomplished. Even in that case it was concluded that from the aspect of double use the question of invention became a close one. The Lakewood Engineering Company Case may well be considered a border line case. Beyond it we have here no occasion to go.

■ Emphasis is laid on the commercial success of the Kyle barrier. There is suggestion in the record that much of it was due to the good will and sales efficiency of the plaintiff and its licensees. Steel Wheel Corporation v. B. F. Goodrich Rubber Company, supra. This we do not decide. When other facts in the case leave the question of invention in doubt, but only then, the fact that the subject of a patent has gone into general use turns the scale in favor of invention. Walk-

er on Patents (6th Ed.) 101. Such situation is not here presented.

Having considered fully the question of invention, and decision on that point being determinative of the controversy, we see no need to discuss anticipation by prior patents, nor the alleged misrepresentation as to claim 7.

The decree of the District Court is affirmed.