## STEWART–WARNER CORPORATION v. JIFFY LUBRICATOR CO.
### No. 10332.

Circuit Court of Appeals, Eighth Circuit.
Feb. 11, 1936.
Rehearing Denied March 14, 1936.

Lynn A. Williams, of Chicago, Ill. (Nilles, Oehlert & Nilles, of Fargo, N. D., and Williams, Bradbury, McCaleb & Hinkle, of Chicago, Ill., on the brief), for appellant.

William C. Green, of St. Paul, Minn. (Edgerton, Green & Edgerton, of St. Paul, Minn., on the brief), for appellee.

Before GARDNER, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

WOODROUGH, Circuit Judge.

In a suit limited on the trial to alleged infringement of claim 1 of patent No. 1,-593,791, filed February 19, 1923, and issued July 27, 1926, to Clyde G. Butler, the trial court held that the claim 1 of the patent was valid if limited to the precise form shown in the patent specifications and drawing (Fig. 2) or their clear mechanical equivalents, and not otherwise, and that unless it was so limited it would be invalid for lack of novelty and invention over the prior art. It held further that the patent as so limited was not infringed by defendant and the suit was dismissed. The plaintiff in the suit has appealed.

The Butler patent, belonging to the plaintiff, relates to improvements in lubricating apparatus for force feed lubrication of bearings on automobiles and other machinery, and both the plaintiff and the

defendant make apparatus for that purpose. It appears that three appliances are necessary in a force feed lubricating apparatus —a grease gun from which grease may be forced, a hollow fitting or nipple attached to the bearing, and a coupler to make a connection between the grease gun and the nipple during the operation of lubrication— and prior to the date of the Butler invention a number of such lubricating appliances combining grease guns connected by means of couplers with hollow nipples attached to the bearings to be lubricated were in general use. Some of them also included apertured gaskets movable within a cylinder which were acted upon in the operation of the coupler by the pressure of the lubricant to seal the joint between the coupler and the nipple, to prevent the leakage of grease. But none of the prior art patents relating to the art of lubrication disclosed an automatic mechanism actuated by the grease pressure for gripping and holding the coupler to the nipple while the contacting ends were automatically kept sealed and the grease was being injected from the compressor into the nipple.

That such was the state of the art was shown by references, including the following patents, among others, which have been fully considered: British patent No. 21,893, issued to Alley and Woodvine, October 4, 1906, showing in combination a lubricating device; No. 927,337, issued to Dupre, July 6, 1909, being for a combination of a lubricant compressor, coupler, and nipple; No. 15,667, issued to Winkley, June 10, 1919, being for a combination of lubricant compressor, nipple, and coupler, said coupler having yieldingly mounted means for forming a tight joint between the nipple and coupler; No. 1,307,734, issued to Gullborg, June 24, 1919, showing the combination of a lubricant compressor, nipple, and coupler, the coupler comprising among other elements a perforated sealing disk slidably mounted in the bore of said coupler for sealing the connection between coupler and nipple, said sealing disk being held against the nipple by the pressure of lubricant; No. 1,465,254, issued August 21, 1923, to Davis upon application filed March 17, 1920, for a combination of lubricant compressor, nipple, and coupler, said coupler comprising among other elements a cup leather or gasket, slidably mounted in said coupler for the purpose of sealing the connection between said coupler and nipple; No. 1,383,306 issued to Jacques July 5, 1921,

for the combination of a lubricant coupler and nipple, said coupler having radially movable locking elements co-acting with a recess in said nipple, the locking action of said elements being controlled by a manually operated locking sleeve, said coupler also comprising slidable sealing means; No. 1,435,103, issued November 7, 1922, to Bruce for a lubricating system comprising among other elements a coupler containing a packing member and including a locking member mounted on said cylinder to engage with a slot in the wall of a nipple for holding said coupler and nipple together during the process of lubrication; No. 1,-711,870, issued May 7, 1929, on application filed May 29, 1922, to Zerk for lubricating apparatus comprising a coupler or nozzle and nipple, said coupler including in its elements a lubricant seal and quick releaseable wedging clamp means for holding said coupler and nipple firmly pressed together during lubrication, said clamping elements being locked upon said nipple by manually operated means.

In his application for patent Butler declared his object, among other things, to provide in combination a self-sealing bearing lubricant valve and also an automatic means of connection between the bearing valve and lubricant pressure means or grease gun, so-called.

The claim of the patent involved is as follows: "1. The combination with a nipple for receiving lubricant, of a lubricant compressor having a coupling for connecting said compressor and nipple the coupling comprising a cylinder, a piston movable within the cylinder, and having an aperture for the discharge of lubricant therethrough and an apertured seat for engagement with the end of the nipple, and means carried by the cylinder for compressively engaging about the nipple for locking said parts together against longitudinal displacement and actuated by said piston whereby the pressure of the lubricant on said piston will move the piston to forcibly compress said means, while the lubricant is passing through said connecting parts."

It will be observed that claim 1 does not describe the grease gun element of the apparatus nor the bearing nipple, but it does set out the elements of the coupler, and it is in those elements that novelty and invention are claimed to reside.

Although several drawings were submitted with the patent application, the

drawing upon which the above claim reads is Fig. 2, which appears as follows:

Fig. 2

The patent specifications which relate particularly to the means referred to in claim 1 as "means carried by the cylinder for compressively engaging about the nipple for locking said parts together against longitudinal displacement and actuated by said piston" and their mode of operation contain first a description of the nipple of the apparatus as follows: "This member 35 is composed generally of two parts, a conical head proper, 38, and a restricted portion or throat 39," and proceed:

"A plurality of segments 40 slightly spaced from one another are adapted to slip over the head 38 and embrace the slot 39. The shoulder 41 on 38 prevents the retraction of these segments 40 due to the fact that they are held in position on the throat by the spring fingers 42, a plurality of which are mounted upon a base 43 which forms a part of a piston head that consists of 43, a metalic washer 44 embracing between it and 43 a leather sealing washer 45. This union of parts 45, 44 and 43 is effected by 43 having a tubular member 46 projecting through 45 and 44 and bent over at 47 upon 44. A passage-way 48 is left through 46 for the passage of lubricant. The lubricant comes through the tubular member 25, through the passage-way 49 into the expanded area 50 within 31. The area 50 will fill up with lubricant because the delivery of lubricant to 50 will be at a greater rate than the lubricant can pass through 48. This will result in 44, 45 and 43, together with the fingers 42, being forced forwardly, maintaining the segments 40 in close engagement with 39. The washer 51 provides a ready means of adjusting the junction of 38 with the remainder of the mechanism and effectively seals the connection so that the lubricant will pass through 48 into 52 after having pushed back the rivet or stud 36, or the clear mechanical equivalent of said structure."

"Returning to Fig. 2 and its operation, it will be understood that the coupling on the end of 25 is thus pushed over 35, the seg-

ments 40 engage with the throat and are maintained in engagement by the pressure being greater on the piston within the coupling than any relief of the pressure that will be possible through the passage of the lubricant through 48.

"As soon as the pressure is relieved it is then possible to withdraw the coupling from the member 35 as the pressure on the fingers 42 will be relieved and the spaced segments 40 will slip over the shoulders 41 due to the pressure of 33 against the ends of the several segments 40."

The plaintiff has not made or sold any coupler constructed according to the above drawing and specifications of its Butler patent, nor had it made or sold any couplers in which the pressure of the lubricant actuated the compression or gripping of the parts upon the bearing nipple until long after it had received examples of the defendant's so-called Jiffy lubricator.

It appears that the defendant Jiffy Lubricator Company was organized in 1930 and that there were at that time millions of automobiles equipped with bearing nipples of plaintiff's manufacture of the so-called Alemite-Gullborg type. The connecting parts of those nipples were straight tubes about five-eighths of an inch long with a pin extended through and projecting from the opposite sides. They were made by the plaintiff for use with its Gullborg coupler. That coupler was provided with so-called bayonet slots and in operation was pushed over the end of the nipple and manually turned so that the angular bayonet slots of the coupler engaged over the projecting ends of the pin of the nipple and a connection was formed which prevented separation of the coupler from the nipple when grease pressure was applied.

Shortly after its organization the Jiffy Company put on the market its lubricating apparatus which included a coupler intended and adapted to connect the coupler to the type of nipple above described by gripping on to the part of the tube of the nipple which extends out beyond the pin. It combines automatic gripping and sealing of the parts and works effectively. The plaintiff contends that it infringes the Butler patent.

The Jiffy Company charges invalidity of the Butler patent, presenting as one of the grounds that Butler did not invent any effective or practical "means" to be actuated by the pressure of the lubricant on the piston for compressively gripping the bear-

ing nipple to the coupler. It contends that the "means" shown by the Butler patent drawing and specifications would not accomplish a gripping adequate to withstand the necessary pressure of many thousands of pounds to the square inch now used in lubrication. It also argues that even if Butler's means would work to hold the coupler to the nipple, that his "means" would not do that work on the same mechanical or engineering principle as do the "means" to lock the jaws of the chuck upon the nipple employed by the Jiffy Company in its coupler. The Jiffy Company also contends that the Butler patent was anticipated in prior art patents and structures and invalid on that account. Also that the Jiffy coupler does not infringe the Butler patent even if that patent should be held to be valid.

On the trial of the case counsel for the plaintiff stated that the language of the claim of the Butler patent was to be interpreted in the light of the Butler disclosure [American Fruit Growers, Inc. v. Brogdex Co., 283 U.S. 1, 5, 51 S.Ct. 328, 75 L.Ed. 801; Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 432, 22 S.Ct. 698, 46 L. Ed. 968; Howe Machine Co. v. National Needle Co., 134 U.S. 388, 394, 10 S.Ct. 570, 33 L.Ed. 963; Smith v. Goodyear Dental Vulcanite Co., 93 U.S. 486, 494, 23 L.Ed. 952; Jensen-Salsbery Lab. Co. v. O. M. Franklin Blackleg Serum Co., 72 F.(2d) 15, 19 (C.C.A.10); Hudson Mfg. Co. v. Louden Machinery Co. (C.C.A.8) 276 F. 527, 531], and as the plaintiff had not manufactured for sale any couplers according to the drawing or specifications on which the claim in suit reads, it caused some couplers to be made up for the purposes of the trial and offered them as a truthful embodiment of the disclosure of the patent claim drawing (Fig. 2) and the specifications. Demonstrations were made in open court showing that grease pressure up to thousands of pounds to the square inch could be injected into a nipple gripped by the chuck elements of the coupler so made up.

The Butler patent coupler, as the plaintiff exemplified and demonstrated it in court, may be described as follows: A small cylindrical device less than two inches long and something over an inch in diameter with walls at both ends, apertured at one end for the introduction of the grease under pressure and at the other to permit the gripping jaws of the device to be slipped over the nipple attached to a bearing for the purpose of holding the mechanism on to the nipple while the grease is forced through and lubricates the bearing. The end of the device at which the grease enters the coupler may be referred to as the rear end and the gripping end as the forward end, picturing the device as lying lengthwise with the rear end to the left and the forward end to the right.

The automatic gripping mechanism comprises a piston movable within the cylinder, apertured to permit passage of grease and provided with a smaller cylinder on its forward side, positioned parallel with the outer cylinder. The wall of the smaller cylinder is beveled out at the forward end so that its inwardly inclining surface makes a suitable female member to receive the thrust of a cone-shaped member in the wedging operation of the device. The cone-shaped member, apertured to inclose the nipple attached to the bearing is composed of three segments loosely disposed in the forward end of the outer cylinder, positioned axially of the cylinder and so that the cone is held at its base against longitudinal displacement by the forward end wall of the outer cylinder.

In operation the apertured cone-forming segments in the forward end of the device are first slipped over the nipple attached to the bearing to be lubricated; then the grease under pressure enters at the rear end of the device and bears upon the left face of the piston. It bears with force because the orifice in the piston for the passage of the grease through it is tiny in comparison with the whole surface of the piston face and the grease pressure causes the piston to move forward. As it moves forward the tapered end of the wall of the smaller cylinder carried on the forward face of the piston receives and engages the segments of the apertured cone-shaped element, and, as they are prevented from receding by the end wall of the outer cylinder, they are forced inwardly by wedging action against the outer surface of the nipple, gripping the same more and more tightly according to the pressure of the grease on the piston.

The automatic sealing element of the device consists of an apertured gasket which fits snugly in the smaller cylinder carried on the forward face of the piston. It is movable axially of the coupler and under the pressure of the grease is pushed against the end of the nipple effecting a

sealing which gets tighter as the grease pressure is increased. The grease pressure which reaches through the aperture of the piston into the smaller cylinder and there actuates the sealing gasket operates upon the sealing gasket independently of the chuck operation which is effected by the forward movement of the piston.

Three straight, thin saw slots have been cut into the smaller cylinder, extending axially of said cylinder from its forward end back to and a little beyond the beveled portion at the forward end of said cylinder. The slots do not perforate the rear part of the smaller cylinder in which the sealing gasket moves, but it is said that they subdivide the forward end of the smaller cylinder into arcuate portions. As that end of the cylinder receives the cone-shaped segments into it, the arcuate portions are said to yield slightly in the wedging operation and it is said that such arcuate portions are "spring fingers" and that their slight resiliency adapts the grip to variations in the nipples.

If the foregoing description is clear, it should picture a little device in which locking means, segments, or jaws are carried by a cylinder and actuated through wedging action by a piston propelled by grease pressure to grip upon a bearing nipple. It is a very simple device including only old elements which work according to old well-known principles, but in the combination they perform the function of automatically gripping and holding the couplers to the bearing nipple and they keep the contacting parts sealed against leakage while the lubricant passes from the grease gun into the nipple.

It has been contended for the Jiffy Company that the Butler patent was anticipated in the field of lubrication by the patent to Goldman, No. 1,406,847, February 14, 1922, and the patent to Tarleton, No. 1,558,313, but consideration of those patents convinces that the attempt of the inventors was to devise bearing nipples or fittings into which grease would be injected in such a way as not to create a tendency of the nipple and the coupler to pull apart from each other, and so as to obviate the necessity for the nipples to be forcibly gripped and held as in a chuck. A "chuck" is defined to be a device for holding work or a tool in a machine, and those inventors were not concerned to invent or improve upon chucks or devices of that nature. The combination of Butler, on the other hand, contemplates the forcing of grease under high pressure into the end of a nipple inserted longitudinally into the coupler so that in the operation of lubrication the direct tendency of the grease pressure is to force the contacting ends asunder. One of his principal problems, therefore, was to make a coupler that would function, among other things, as a chuck to forcibly grip and hold the nipple in the coupler during the lubricating operation. We do not find that the Goldman or Tarleton or any other lubricating art patent anticipates or limits the automatic gripping means of the Butler patent. See Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U.S. 301, 318, 29 S.Ct. 495, 53 L.Ed. 805; C. & A. Potts & Co. v. Creager, 155 U.S. 597, 15 S.Ct. 194, 39 L.Ed. 275; Lyman Mfg. Co. v. Bassick Mfg. Co. (C.C.A.6) 18 F.(2d) 29.

The most serious question arises as to the chucks used in other arts. No. 1,236,-453, to A. J. Lavoie, August 14, 1917, and No. 1,118,876 to R. S. Newton, November 24, 1914, are principally relied on to show anticipation and have been fully illustrated, analyzed, and, as to Newton, demonstrated in operation.

The patent to Lavoie, No. 1,236,453, of 1917, is one of a number of patents covering chucks for holding work in a lathe. It provides for a cylinder and a piston therein operated by fluid pressure in Fig. 1, locking jaws attached to the piston which are propelled by the forward movement of the piston longitudinally into and through the restricted neck of the cylinder, gripping the object to be held by wedging action of the jaws; and, Fig. 3, locking jaws not attached to the cylinder but actuated by fingers attached to the piston and compressing the jaws by wedging action. The fluid pressure referred to in this patent is air or the like. The machines made under it were used for holding artillery shells to be worked upon while rotated in the lathe.

The Newton patent was for improvements in hose and coupling testing appliances using fluid pressure and embodying, as stated by the inventor, instrumentalities which, when applied to the nipple or coupling member of the hose to be tested are automatically clamped and sealed thereto by the pressure which is introduced for testing the hose. Newton showed a coupler comprising a sleeve or cylinder, an apertured piston movable within the cylinder, a sealing means to receive the end of the nipple of a hose, radially yielding spring

fingers, extending from a clamping ring mounted upon the carrying plate portion of the piston; the fingers and piston being longitudinally movable in the cylinder.

In operation the metallic end piece of the hose to be tested (which has an uneven surface) is inserted into the end of another hose or soft packing tube which is a part of the machine and consists of a tubular fluid tight material, such as a short length of hose pipe, to receive the end piece of the hose to be tested within one end thereof; the other end being tightly clamped between an internal metal expander or short tube and a clamping ring in air tight connection. Air under pressure flows into the cylinder and forces an apertured piston to move forward pushing the spring fingers into engagement at their forward cam surfaced ends with the cam surfaced end of the outer tube or sleeve of the device, whereby the spring fingers are forced radially inward and caused to compress the packing tube firmly against the outer surface of the coupling member so as to make a tight joint therewith, so that the pressure will pass through into the hose and exert a testing pressure therein.

The Newton patent includes elements which operate to automatically eject the hose from the machine after the test has been completed. The elements which per-form that function substantially condition the arrangement of the structure which embodies the invention; but it will suffice to say that after the flow of pressure has been cut off from behind the apertured piston the movement of the piston in the cylinder is forcibly reversed and so much pressure remains in the hose and expander portion and the aperture left for its escape is so small that the pressure forcibly ejects the tested hose.

The structure of Newton and the structure which plaintiff has made up for the embodiment of Butler each has a coupler and they have chuck elements. Both may be classified as automatic chucks; in each there is an automatic sealing of parts kept in contact during injections made under pressure. There are several elements in each which operate according to the same old, well-known mechanical principles. The pressure introduced into Newton's cylinder moves his apertured piston forward on the same principle on which Butler's does, although Newton contemplated the use of compressed air or something like it in the operation of his machine. But consideration of the details

of his patent as clarified by the embodiment and operation compels the conclusion that it could not be embodied in a structure that could be operated effectively for lubrication. The materials he proposes are unsuitable. The means for sealing the contacting parts could not be used successfully in a lubricating device and the spring fingers of his invention would not be effective.

The differences between the sealing and clamping mechanisms revealed by the Newton patent and the gripping and end-sealing of the plaintiff's model coupler are so substantial that the teaching of the Newton patent would not enable a mechanic, skilled in the art, to make such a coupler for lubricating apparatus, but invention would be necessary.

We think that when we allow to the Butler patent such presumption of validity as its issuance by the Patent Office would entitle it to [Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 434, 31 S. Ct. 444, 55 L.Ed. 527], even though neither Lavoie nor Newton were there cited against it [National Elec. Products Co. v. Grossman (C.C.A.2) 70 F.(2d) 257; Stoody Co. v. Mills Alloys (C.C.A.10) 67 F.(2d) 807, 813; R. Hoe & Co. v. Goss Printing Press Co. (C.C.A.2) 30 F.(2d) 271, 274; American Soda Fountain Co. v. Sample (C.C.A.3) 130 F. 145, 149], that the defense of anticipation for want of novelty was not sustained.

Reviewing the prior art, however, we find that it is an old idea to make a chuck whose jaws or gripping elements are segments carried by a cylinder; the segments being drawn together into firm grip upon an object by wedging action between the cylinder and the segments. It is also an old idea to actuate the segments so carried in a cylinder into gripping by wedging action caused by the forward movement of a piston in the cylinder. Also to use fluid pressure to cause the forward movement of the piston in the cylinder. It has also been shown that Newton advanced further still towards the ideas of the Butler patent. He disclosed the ideas of a combination of an automatic chuck with clamping fingers actuated by the forward movement of an apertured piston in a cylinder and forced into the conically constricted end of a sleeve, such forward movement being caused by the introduction of pressure into the cylinder behind the piston, and the idea of a sealing also automatically effected by the same pressure and the injection of the same pressure through the cylinder and through the piston and the

sealed contacting ends into the hose to be tested.

Evidently there has been long-continued development of the art of making chucks, and particularly chucks whose jaws are actuated by a piston in a cylinder, followed in the Newton patent by the automatic chuck in which the very fluid pressure to be injected into the work held in the chuck not only actuates the chuck but automatically seals the contacting parts. Though none of these patents actually anticipates the claim of the Butler patent covering his coupler adapted for lubricating apparatus, they preclude any conclusion that his was a pioneer patent in the art of making automatic chucks. See Computing Scale Co. v. Automatic Scale Co., 204 U.S. 609, 27 S.Ct. 307, 51 L.Ed. 645; Boyd v. Janesville Hay-Tool Co., 158. U.S. 260, 267, 15 S.Ct. 837, 39 L.Ed. 973; Miller v. Eagle Mfg. Co., 151 U.S. 186, 207, 14 S.Ct. 310, 38 L.Ed. 121; McKays Co. v. Penn. El. Switch Co. (C.C.A.8) 60 F.(2d) 762.

We revert to the contention of the Jiffy Company that the Butler patent does not disclose "means" to be actuated by the pressure of the lubricant on the piston for compressively gripping the bearing nipple to the coupler, which are mechanically similar to the "means" of the Jiffy coupler. The model coupler which the plaintiff caused to be made up for trial purposes works effectively, as was demonstrated before us, but the contention is that it does so because it is not made up according to the teaching of the Butler patent and departs from that patent, and follows the Jiffy coupler which had been shown to the plaintiff long before it made up the model.

It will be recalled that in the plaintiff's coupler as exhibited there is a smaller cylinder projecting forward from the forward face of the piston. The wall of the smaller cylinder is beveled out at the forward end and the engagement of the beveled end of the smaller cylinder with the cone-shaped gripping segments held as they are against longitudinal displacement produces a wedging action that compresses the segments forcibly about the nipple, wedging them together with force proportionate to the pressure of the grease behind the piston.

The accused Jiffy coupler consists generally of a cylinder, the inner surface of the forward end of which is tapered, forming a conically restricted end and providing a working surface for the chuck jaws to be described. Within the cylinder is a piston composed of a piston head, from which projects a tube integral therewith. Within the tube is a packing washer. Around the outer surface of the tube is a bead or shoulder. Around the tube are loosely disposed jaws, each being formed with a groove which engages over the bead or shoulder on the tube portion of the piston. The jaws thus held freely disposed on the outer end of the tube are guided and held in operating position by the cylinder. The outer end of the outer surface of each of these jaws is beveled so as to engage the beveled surface of the conically restricted end of the casing. The inner portion of the outer end of each jaw forms a gripping surface for the purpose of gripping a nipple or fitting when the coupler is slipped over it. On the inner end of the piston head is a packing washer attached to the piston head by a hollow spring rivet which passes through the head. As lubricant comes from the grease gun into the coupler under pressure from the gun, due to the comparatively small opening through the piston head and rivet, the lubricant builds up a pressure behind the piston head which carries the jaws, it is forced ahead, and the jaws are thus forced into the conically restricted ring end of the cylinder, intensely gripping the nipple or fitting. Because of this construction automatic gripping is secured during the process of lubrication, and because the jaws are forced into the conically restricted end of the cylinder, the greater the pressure of the lubricant the greater the gripping force of the jaws. Upon the release of pressure of the lubricant the jaws are released and the coupler may be removed from the nipple.

Comparing the two structures it is observed that the wedging action that locks the jaws upon the nipple is accomplished in each of the devices by means that are exact mechanical equivalents of each other. In the Jiffy coupler the apertured cone formed by the jaw segments is pushed and wedged into the constricted end of the cylinder. In the Butler device the cone-shaped jaw segments are held still by the end wall of the outer cylinder while the inwardly beveled constricting end of the smaller cylinder on the forward face of the piston is pushed over them and they are wedged into it. There is simply a reversal, but in each instance a positive unyielding wedge is present which tightens proportionally to the grease pressure on the piston, and so the two structures are mechanically identical. Smith v. Snow, 294 U.S. 1, 55 S.Ct. 279, 79 L.Ed. 721.

But when we turn to the Butler patent specifications disclosing the "means" he had

in mind for "compressively engaging about the nipple for locking said parts together," we find no reference to any elements corresponding to such positive wedging means as above described. He describes a nipple having a head, a throat, and a shoulder, and segments adapted to slip over the head of such a nipple and embrace the throat thereof. Then he specifies spring fingers mounted on the forward face of the piston. Ample room is left in the cylinder for the free play of the spring fingers. As the piston is moved forward by the pressure of the lubricant, the spring fingers do engage and press upon the segments so that the segments are pressed upon the throat of the nipple. But the nipple is not specified to be held against longitudinal displacement by the force of the gripping. The language of the specifications is that the segments are held in position on the throat by the spring fingers, but it is the "shoulder" on the nipple which "prevents the retraction of the segments" or pulling away from the nipple. We conclude from consideration of all the specifications and the drawing that the inventor excluded disclosure of elements which would be actuated by the forward movement of the piston to lock the coupler to the nipple by any unyielding wedging action, but that he disclosed only such a yielding compression as should be accomplished by spring fingers.

It seems clear that the compression of spring fingers—elastic members which yield under stress and return to normal when stress is removed—is substantially different from compression by wedging action.

We have considered the argument of the plaintiff that the saw slots cut into the smaller cylinder of its device result in arcuate end portions and bring the smaller cylinder of the device within the specification of "spring fingers," but we are not persuaded. No inner cylinder projecting from the forward face of the piston is specified in the Butler patent, and we are not persuaded that one is implied by the presence of the washer 51 shown in the drawing and specified as "providing a ready means of adjusting the junction of 38 with the remainder of the mechanism." It is not certain that said washer was intended to move away from its seat upon the face of the piston as it appears that spring fingers mounted upon the piston would not afford a suitable environment for such movement. In so far as the saw slots cut into the smaller cylinder play any part in the operation of the device, they merely tend to weaken the wedging force upon which the effective operation depends. They are not suggested by the teaching of the Butler patent, but more probably, according to the evidence, by the efficient structure of the Jiffy coupler.

Although we consider the Jiffy coupler a clear mechanical equivalent of the coupler which has been made up by the plaintiff to demonstrate the Butler patent, we find the latter to be a departure and different from the real disclosure of that patent. The file wrapper of the Patent Office in the matter of the patent to August Johnson, No. 1,984,878, reflects that claims made by Johnson were denied on account of the prior patent to Butler. The rulings indicate an opinion in the Patent Office as to the scope of the Butler patent differing from that reached by the District Court, but the courts are not bound to follow the Patent Office. Dwight & Lloyd Sintering Co. v. Greenawalt (C.C.A.2) 27 F.(2d) 823, 832.

We find the difference between the Butler patent and the Jiffy coupler substantial, in that the mechanical or engineering principle on which the Butler patent compresses the jaws of its chuck about the bearing nipple is different from that relied upon in the Jiffy structure. As they are not mechanical equivalents and as it does not appear that Butler invented or disclosed such a chuck as that made by Jiffy, there was no infringement.

The trial court so found and its opinion is entitled to weight. Trico Products Co. v. Apco-Mossberg Corp. (C.C.A.1) 45 F.(2d) 594, 599; Star Can Opener Co. v. Bunker-Clancey Mfg. Co. (C.C.A.8) 41 F.(2d) 142; Steel Wheel Corp'n v. B. F. Goodrich Rubber Co. (C.C.A.6) 42 F.(2d) 406; Gulf Smokeless Coal Co. v. Sutton, Steele & Steele (C.C.A.4) 35 F.(2d) 433.

The claim that Butler accomplished a new and useful result in the industry, and therefore is entitled to broad protection (Smith v. Snow, 294 U.S. 1, 14, 55 S.Ct. 279, 79 L.Ed. 721, and cases there cited), is without merit. As was said in Dernell Potato Products Co. v. Snelling (C.C.A.2) 38 F.(2d) 788, 789: "The appellant's patent has not been put to commercial use, and therefore it is not entitled to a construction of any broader scope than it is clearly required to be given. Cont. Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. [405], 414, 28 S.Ct. 748, 52 L.Ed. 1122; Cocks et al. v. Rip Van Winkle Wall Bed Co. (C.C.A.) 28 F.(2d) 921; Westinghouse El. & Mfg. Co. v. Toledo, P. C. & L. Ry. Co. (C.C.A.) 172 F.

371; Nat. Malleable Castings Co. v. Buckeye Malleable Iron & Coupler Co. (C.C.A.) 171 F. 847."

The findings and conclusions of the trial court are sustained by the evidence, and its decree is affirmed.