## STEWART–WARNER CORPORATION v. LEVALLY et al.

### No. 13955.

District Court, N. D. Illinois, E. D.

Oct. 5, 1936.

For former opinion, see 15 F.Supp. 571.

Williams, Bradbury, McCaleb & Hinkle, of Chicago, Ill., for plaintiff.

Wilkinson, Huxley, Byron & Knight, of Chicago, Ill., Delos G. Haynes and Lloyd R. Koenig, both of St. Louis, Mo., and Leonard L. Kalish, of Philadelphia, Pa., for defendants.

LINDLEY, District Judge.

Subsequent to the entry of decree herein, defendant Lincoln Engineering Company of Illinois filed its petition for rehearing, supported by affidavits and exhibits. Plaintiff appeared in defense thereto and filed its counter affidavits and exhibits. Extended oral arguments were heard and briefs of no inconsiderable length submitted.

Defendant's first premise is the alleged discovery of additional material evidence; its second, alleged error by the court in its findings, conclusions and decree. Defendant's action in the latter respect is equivalent merely to an attempt to reargue issues previously determined, after a vol-uminous record had been made and full and complete briefs and arguments submitted. Such practice is not to be encouraged, for, if a court has once rendered its best efforts to arrive at proper solution of questions submitted, upon complete presentation, it should not be subjected to a demand to consider the same again. Otherwise, litigation would never end; "suits would become immortal, and the decision be postponed indefinitely." Jenkins v. Eldredge, Fed.Cas. No. 7,267, 3 Story, 299, 305 (Story, J.).

Defendant alleges that, since the trial, it has discovered additional material evidence, consisting basically of statements made to the Patent Office in the course of the solicitation of Bystricky patent No. 2,016,809, issued on October 8, 1935 to plaintiff, as assignee. Aside from any question as to materiality, when the patent was issued on October 8, 1935, its contents and the file wrapper thereof became available to the public, including defendant. Any time thereafter any one could have obtained a complete transcript of the record in and about the application for and allowance of the patent. Moreover, at the time of the trial herein, defendant's counsel had in its possession a transcript of the record of Stewart-Warner v. Rogers and Stewart-Warner v. Universal Lubricating Systems, Inc., et al., suits tried in the District Court for the Western District of Pennsylvania, wherein defendants offered in evidence, the Bystricky patent and wherein, according to the said transcript, arguments were submitted to the court as to its admissibility and testimony was introduced regarding it, 29 pages in length, on October 30 and 31, 1935. Counsel for defendant stated, at the trial of this cause in April, 1936, that he had five volumes constituting the entire transcript in the said suit. Consequently, he was charged with notice of the contents thereof and of the fact that the Bystricky patent had issued and that he had access to the file wrapper at any time. Furthermore, associate counsel, who now appears in the case, tried those cases in Pennsylvania. Thus, there is utter failure to show that defendant exercised reasonable diligence before the hearing in this cause, in procuring the evidence now proffered as newly discovered. This essential lacking, the court cannot rightfully consider the evidence. Pittsburgh Reduction Co. v. Cowles Electric Smelting & Aluminum Co. (C.C.) 64

F. 125; McLeod v. New Albany (C.C.A.) 66 F. 378; Allis v. Stowell (C.C.) 85 F. 481; Moneyweight Scale Co. v. Toledo Computing Scale Co., 199 F. 905, 118 C.C. A. 235; Australian Knitting Co. v. Wright's Health Underwear Co., 121 F. 1017, 56 C.C.A. 678.

Thus in Combustion Utilities Corporation v. Worcester Gaslight Co. (C.C.) 190 F. 155, a rehearing was denied where the defendant claimed to have discovered that another patent anticipated the one in suit, when such patent was referred to in the defendant's brief and record upon the original hearing. Similarly, because of the discovery of a mortgage on the patent, which was shown by the file wrapper then put in evidence. Money-Weight Scale Co. v. Toledo Computing Scale Co. (C.C.A.) 199 F. 905.

However, despite the insufficient showing in this respect, the court, at a sacrifice of no inconsiderable time and labor, has examined the offered evidence and the other suggestions of counsel with a view to determining whether, had the plaintiff exercised diligence, there is anything in the newly offered evidence which would have changed the result or which bore materially upon the issues adjudicated. Obviously, the first question to be determined, is whether the new evidence sought to be introduced would have been material or helpful in determining the issues. If not, its proffer is wholly futile. Section 647, Walker on Patents; Munson v. New York (C.C.) 11 F. 72; New York Grape Sugar Co. v. American Grape Sugar Co. (C.C.) 35 F. 212; Bates on Fed. Procedure, vol. 2, § 683; Foster's Fed. Practice (2d Ed.) 352.

The statement in the file wrapper, to which the defendant directs the attention of the court, was made by counsel for plaintiff herein as solicitors for the Bystricky patent, in the course of argument as to patentability of certain claims previously rejected, to the effect that the combination there submitted, had, in the short time it had been on the market, been universally accepted by manufacturers, and become standard equipment upon automobiles made in the United States. It was urged by the solicitor, therefore, that any doubts as to patentability should be resolved in favor of the applicant. In itself, of course, the statement is wholly valueless in the record, but it is urged by defendant that, followed to its logical conclusion, it

means that the Alemite Hydraulic System considered by the court in the present case was thereby admitted to be exclusively the invention of Bystricky.

Upon examination of the Bystricky patent and a re-examination of the record herein, although the validity of the patent is not before me, it seems obvious to me that Butler was a pioneer in the field of lubricant pressure in the sense that that term was used by the Supreme Court in the Leeds & Catlin Case (Leeds & Catlin Co. v. Victor Talking Machine Co.), 213 U.S. 301, 29 S.Ct. 495, 53 L.Ed. 805, and that Bystricky invented an improvement upon the Butler construction. The findings of fact and conclusions of law heretofore entered, which I see no occasion to modify, pointed out Butler's invention and found that the Alemite System embraced the Butler invention. Nothing now urged moves me in the slightest degree to conclude otherwise.

Another statement of the solicitors in the file wrapper is that the Bystricky coupler was not "practically operative except in combination with a compressor of a certain definite type, in which means are provided to relieve or partially relieve pressure in the discharge conduit so as to facilitate disconnection of the coupler from the fitting." It is contended that this argument clearly indicated that the Alemite System does not embody the Butler invention, but rather that of Bystricky. Such statement is in nowise inconsistent with the record herein, for, as we have seen, Bystricky is merely an improvement upon Butler and used the same means for release of pressure. I conclude, therefore, that the proferred evidence, if received, would be immaterial, but if material, would not have affected the result.

The contention that the court has misconstrued the decision of the Supreme Court in Bassick Mfg. Co. v. R. M. Hollingshead Co. (Rogers v. Alemite), 298 U. S. 415, 56 S.Ct. 787, 80 L.Ed. 1251, is clearly reargument of something fully presented at the original hearing. But I have again examined the opinions of the Supreme Court and have had submitted to me a transcript of the record of the Hollingshead Case in that court, as an exhibit in answer to the petition for rehearing. I adhere to what I have said in my opinion, findings, and conclusions in that respect.

In my memorandum, I made a statement to the effect that the record in the

Hollingshead . Case was rather short. Counsel for defendant disagree. The word is one of comparative connotation. The transcript shows 181 pages of testimony, which is a short record as compared with the present one. But whether the record was short or long, is, after all, wholly immaterial. The important thing was the limited character of the issue presented to the court.

Due to some mental aberration, in the original opinion, I made the statement that the Court of Appeals for the Sixth Circuit "affirmed" the holding of the lower court. Obviously the court did not affirm the decision of the district court, but did agree with its conclusions in the respects under consideration when I used the expression.

The word "affirmed" should have been "agreed." If we attribute to the word "affirm" its strict legal significance, the error, in the words of counsel for plaintiff, was merely lapsus linguæ.

We may well again refer to the character of the Butler patent. I have pointed out in my findings of fact and conclusions of law heretofore entered that Butler was the first to propose or devise a lubricating system in which the sealing of a joint between the end of the nipple and coupler and the mechanical grip between the nipple and coupler were achieved automatically by the pressure of the lubricant in and by the normal pumping operation of the compressor, and that the advantage of this combination arises from the fact that in the greasing of automobiles, in forcing grease into the bearing through the narrow opening of the fitting, thousands of pounds of pressure are sometimes utilized in order to remove and force out foreign bodies in the grease duct or channel. Former devices provided a seal by a screw connection between the coupler and the fitting, by a bayonet connection or by mere manual physical pressure. In all of these, some leakage occurred, and physical manipulation entailing some labor was necessary. In none of them could the pressure be exerted and the grease delivered perfectly without leakage, under desirable pressure, and with the saving of labor resulting from Butler's teaching. I previously pointed out, due to the peculiar shape of this nipple, its head and shoulders couple with the gripping jaws of the coupler in such a way that, when pressure is exerted and the grease passes from the coupler in-to the fitting, the coupler grabs hold of the projecting shoulder of the nipple with its jaws and automatically, as the pressure of the grease increases, simultaneously, the power, force, and closure of the connection increases, so that it is impossible for grease to escape and any desired pressure of grease may be transmitted without breakage of parts or leakage of material. All this was accomplished without further manipulation other than the easy, almost automatic, attachment of the coupler to the nipple and the application of the pressure. This, I have said, was a step forward in the greasing of automobiles. No one had ever taken it, though the art is full of grease guns and nipples. It remained for Butler to devise an easy operable combination in which the nipple and the coupler automatically co-operate, each contributing its part to the one result of high-pressure grease delivery through a sealed connection, effected automatically and increasing in efficiency with the increase of the pressure. This, I said, was invention and the combination, I held, became, therefore, a pioneer invention in the sense that the Supreme Court used that word in the Leeds & Catlin Case.

Obviously, most modern inventions are of combinations. Changes in the art are effected either by the addition of new elements, the withdrawal of existing elements, alteration in their qualities or arrangement or substitution of a new element for one previously employed. Each of these changes may effect a mere change of form, or an improvement of an old invention, or a new invention. If the new combination involves only a variation in the method of reducing the original idea to practice or if, while varying the idea of means, it neither changes its essential character nor gives substantial increase to its practical efficiency, it is a mere change of form, involving no invention. *"If the change indicates the introduction into the idea of means of a different force, a different object, or a different mode of application, it is more than a change of form, more even than an improvement; it is a separate invention.* If it preserves the essential characteristics of the original invention, applying the same force to the same object by the same method, but accomplishing results with higher excellence or with greater economy of time or power, and is not the product of mechanical skill alone, it is an improvement." Robinson on

Patents, vol. 1, ch. 11, § 215, p. 299. (Italics mine.)

"Where the apparent variation in the original invention produces no change in its effects or in the economy of time or power, if the factors and the mode of operation of the original and improved inventions are the same, the variation must be in embodiment alone; if different, the inventions are entirely independent of each other. *Where the effects produced by the invention in its changed condition differ in nature from those accomplished by it in the old, the change has passed beyond the limits of a mere improvement and has resulted in a new invention.* If the effects, although the same in nature, are so enhanced in excellence that the original idea of means, in no form of embodiment, could have produced them, the change is more than formal, but may be either an improvement or a new original invention. In this case, as in that wherein no change occurs in the effects, the original and improved inventions must be compared as operative means and examined in their mode of action as well as in the subordinate idea of which each is composed. If this examination discloses a substantial difference, either in the nature of the operation or the means, the two inventions are distinct; otherwise the latter is a mere improvement on the earlier." Robinson on Patents, vol. 1, ch. 11, § 216. (Italics mine.)

So, here, Butler introduced into the art the idea of an automatic sealing connection achieved by the size and character of elements, which, in themselves, were old. But he employed a different mode of operation. He achieved his object by means of a different force and according to a different and new conception. His invention then was not an improvement but a new and separate invention, and, within the reasoning of the Supreme Court in the Leeds & Catlin and the Hollingshead and Rogers Cases, a pioneer. In the latter two cases the court was not dealing with a combination patent wherein, by the use of a nipple of a certain particular form and shape and dimensions co-operating with the gripping jaws of a coupler of special form and shape, an automatic unbreakable connection was achieved, making possible that highly desirable thing in automobile greasing, unlimited pressure. Butler did not combine a certain coupler with any nipple. He did not combine a certain nipple with any coupler. He was not, as the

Supreme Court believed Gullborg had done, trying to extend his patent to a combination of a certain nipple with *any* kind of grease gun. Quite to the contrary, he demonstrated conception of a new creative thought, the achievement of a new valid combination in which not only the coupler was essential, but in which also the nipple of peculiar shape and dimension was essential. He produced a new combination, a new arrangement of known elements, by virtue of which he produced an entirely new and beneficial result. He developed new functions and new properties and achieved novelty, resulting in great commercial success.

In this situation, defendant entered the field and developed its nipple of equivalent form, shape, and dimensions, which it sold, obviously, for use with Alemite guns, supplanting in the combination of Butler the nipple essential to his success. It is a striking fact that a nipple of this shape and dimension was not necessary to the operation of defendant's grease gun or of any guns other than those of plaintiff or of infringers or licensees of plaintiff—a fact of tremendous significance in determining the purposes and intent of defendant. It sold grease guns which operated with straight-headed nipples as well as with nipples with head and shoulders. It first made straight-headed nipples and exhibited them to General Motors Corporation, but it sold to that company only nipples of infringing character, a character not essential to any combination other than plaintiff's.

Despite the fact that the court would have been justified in denying the petition for rehearing because nothing therein constituted newly discovered evidence and because the record shows that the defendant failed to exercise reasonable diligence to discover the evidence claimed to be newly discovered and despite the inclusion in certain affidavits of improper, well-nigh scandalous, irrelevant averments, I have examined everything submitted, re-examined the authorities, and again endeavored to make myself clear. Clearly, no new material evidence has been suggested. The attempt to reargue the merits of the case, though not exactly praiseworthy upon the part of counsel, has been met by a re-examination of the record and of my findings and conclusions. The petition for rehearing is denied.

■ It appears that the decree was too broad in enjoining the manufacture and

sale of the nipple contributorily infringing, beyond the limits of the United States. Accordingly, the original decree is vacated, and a decree properly enjoining defendants only within the United States and in conformity with my findings of fact and conclusions of law and this memorandum will be entered.