LINCOLN ENGINEERING CO. OF ILLINOIS v. STEWART–WARNER CORPORATION.

No. 6103.

Circuit Court of Appeals, Seventh Circuit.

June 29, 1937.

Rehearing Denied Sept. 15, 1937.

758

Leonard L. Kalish, of Philadelphia, Pa., Delos G. Haynes and Lloyd R. Koenig, both of St. Louis, Mo., and Milton T. Miller, of Chicago, Ill., for appellant.

Lynn A. Williams, of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

EVANS, Circuit Judge.

Appellee is the owner of the Butler Patent, No. 1,593,791. Appellant is the distributor of the Lincoln Engineering Company of St. Louis, Missouri, which is conducting and controlling the defense to this litigation. It is charged with infringing the Butler Patent. The trial was a long one, and the District Court prepared his own findings and conclusions which fully covered the nature of the invention, the claims, the

defenses, the state of the art, as well as other material issues. These findings favored the appellee.

Accompanying the findings was an opinion which set forth the reasons for the conclusions which the court reached. About three months later, upon a petition for rehearing filed by appellant, the court filed a second opinion, which may be found in Stewart-Warner Co. v. Levally (D.C.) 16 F.Supp. 778. Three weeks later the court filed a third opinion which dealt with questions raised by appellant. The third opinion appears in 31 U.S.P.Q. 195. Reference is made to the places where these opinions appear because it will, we think, justify a more abbreviated statement of the facts. Different conclusions respecting the same claim (No. 2) of this patent, so appellant asserts, were reached by other Federal courts. Stewart-Warner Corporation v. Jiffy Lubricator Co. (C.C.A.) 81 F.(2d) 786; Stewart-Warner Corporation v. Rogers (D.C.) 15 F.Supp. 410.

The decree subsequently entered granted an injunction that restrained future infringements of the patent and directed an accounting of profits and damages occasioned by past infringements.

The application for the Butler patent was filed February, 1923, and the patent issued July 27, 1926. It related to Lubricating Apparatus.

Claim No. 2, the one in issue, reads as follows:

"2. The combination with a headed nipple for receiving lubricant, of a lubricant compressor having a coupling member for connecting said compressor and nipple comprising a cylinder, a piston movable within the cylinder and having an aperture for the discharge of lubricant thereof, an apertured sealing seat carried by said piston for engagement with the end of the nipple, connecting the piston aperture with a passage through the nipple, radially movable locking elements carried by the cylinder coacting with the nipple and actuated by said piston for compressively clutching the elements upon the nipple whereby the pressure of the lubricant on said piston will move the piston to forcibly compress said elements while the lubricant is passing through said connecting parts."

The patent deals with a lubricating apparatus. Butler's object, as stated by him, was "to provide a means of forcing under high pressure fluid and semi-fluid lubricat-

ing compounds into bearings, * * * in order that foreign material and used lubricant therein may be forced out of the bearing. * * *" His specifications described a "co-operating bearing and self sealing bearing lubricating valve, * * * a bearing reservoir for lubricant and means for automatically feeding the lubricant therefrom to the bearing, * * *" and "automatic and semi-automatic means of connection between the bearing valve and the lubricating pressure means * * *" are described.

Judge Lindley, describing the patent, said:

"* * * Butler was the first to propose or to devise a lubricating system in which the sealing of the joint between the end of the nipple and the coupler and the mechanical grip between the nipple and the coupler were achieved automatically by the pressure of the lubricant in and by the normal pumping operation of the compressor, * * * the advantage of this combination arises from the fact that in the greasing of automobiles, in forcing grease into the bearing through the narrow opening of the fitting, thousands of pounds of pressure are sometimes utilized * * * due to the peculiar shape of this nipple, its head and shoulders couple with the gripping jaws of the coupler in such a way that, when pressure is exerted and the grease passes from the coupler into the fitting, the coupler grabs hold of the projecting shoulder of the nipple with its jaws and automatically, as the pressure of the grease increases, simultaneously, the power, force, and closure of the connection increases, so that it is impossible for grease to escape and any desired pressure of grease may be transmitted without breakage of parts or leakage of material. All this was accomplished without further manipulation other than the easy, almost automatic, attachment of the coupler to the nipple and the application of the pressure."

In short, the asserted superiority and virtue of the Butler lubricating apparatus are twofold: (a) The apparatus permits of the application of thousands of pounds of pressure with no loss of grease, and (b) an easily operable device wherein the coupler's grip increases with the pressure of the grease.

The substance of the more important findings of the trial court is:

1. In practical operations, grease pressures running up to thousands of pounds per square inch are frequently required in order to force the grease into the interstices of a bearing.

2. When the compressor is operated under these high pressures, the tendency is to burst the compressor, coupler, and the nipple, and to break open the connection between the coupler and the nipple by forcing these parts asunder. To avoid this break or separation of coupler and nipple, the maximum tightness of seal and the maximum mechanical grip must be obtained and must be proportional to the pressure of the grease to be transmitted.

3. In the Butler apparatus the automatic end seal and the automatic grip both become more effective as the lubricant pressure increases and the need for a more effective seal and grip bcomes greater. Butler's seal member is movable and thus may adjust itself to fittings of slightly different dimensions.

4. In the Butler combination the end seal and automatic grip both become more effective as the lubricant pressure increases. The end seal member is movable and thus may adjust itself to fittings of slightly different dimensions. Any resiliency referred to in the patent as constituting spring fingers serves the purpose of compensating for any slight out of roundness of the fitting.

5. Butler presented to his solicitor a sample device including a coupler, the jaws of which were forced into clamping engagement with the nipple by a relatively rigid, hollow, cylindrical part corresponding exactly to the disclosure of Figure 2 in the Butler patent.

6. Butler was the first to devise a lubricating system in which the sealing of the joint between the end of the nipple and coupler and the mechanical grip were effected automatically by the pressure of the lubricant, which pressure was produced by the normal pumping operation of the compressor.

7. Claim 2 is the only one in issue and describes a combination of seven elements: (a) nipple, (b) a compressor, (c) cylinder, (d) piston, (e) aperture, (f) jaws, (g) sealing seat. "Each and all of these parts co-operate with one another in new ways in the accomplishment of a new and unitary result."

8. Appellee began selling Butler lubricating equipment in April, 1933, and prior thereto sold apparatus covered by the Gullborg and Zerk patents. From April, 1933,

to March, 1936, it sold 281,555,000 fitting parts of the Butler combination, and 6,306,000 coupler parts. Over half of the latter were sold with the associate compressors to automobile manufacturers, to be put in the tool kits at the factory. Within eight months after its introduction, the Butler system had been adopted as the factory lubricating equipment of every automobile and truck made in the United States with one exception.

9. "The mechanism embodied in the means by which the jaws are compressed about the nipple of * * * (appellee's) system is identical in its mechanical principles with that disclosed in the Butler patent. It is a simple equivalent involving a mere reversal of parts."

10. Appellee's system comprises a combination of elements, as set forth in claim 2 of the Butler patent.

11. Prior to 1933, appellant was engaged in the business of making and selling automobile lubricating equipment to appellee. In 1933, it began selling lubricating apparatus to others. It made and sold couplers and nozzles with the expectation that they would be used with appellee's apparatus. Its nipples were sold with the knowledge that they could, and would, be used as part of appellee's combination. The dimensions of appellant's fittings are exactly such as to fit appellee's coupler. If they did not select exact dimensions such cooperation would have been impossible. Appellant's "Lincoln Kleenseal Fittings" were sold to be used in combination with the compressor and coupler parts of the Butler combination as made and sold by appellee. Appellee sold its compressor and coupler parts of the combination to public garages and service stations in the United States, and appellant offered its fitting parts to be used by the said garages in connection with the Butler combination. Appellant duplicated fitting for fitting all of the arbitrary dimensions of the entire line of appellee's fittings.

12. The Butler patent does not require the use of spring fingers which can yield a substantial amount.

13. Appellant's model of Figure 2 of the Butler patent does not accurately or fairly represent the invention of Butler.

14. Claim 2 of the Butler patent describes both a "Lincoln Kleenseal" fitting, appellant's product, and "Alemite Hydraulic" fitting, appellee's product.

As conclusions, the court found:

That claim 2 of the patent is valid, and defendant contributorily infringed it by the sale of "Kleenseal" nipples or fittings, exemplified in plaintiff's Exhibits 27a and 27b; and that appellee is entitled to an injunction and to an accounting.

Appellant challenges the decree on three separate, distinct grounds, stating each with commendable frankness, brevity, and clarity:

(1) Butler's hose coupler can not be validly claimed in combination with a nonpatented lubricant receiving nipple or an old compressor, particularly where his conceded purpose is not merely to monopolize the hose coupler, but to include in the monopoly the admittedly old device which is used with it. To support this position appellant relies upon Bassick Manufacturing Co. v. R. M. Hollingshead Co. (Rogers v. Alemite Corp.), 298 U.S. 415, 56 S.Ct. 787, 791, 80 L.Ed. 1251.

(2) The coupler of the Butler patent shown in Figure 2 is not the so-called "Alemite Hydraulic" coupler. Supporting this position, appellant relies upon the facts brought out by the evidence and the holding in Stewart-Warner v. Jiffy Lubricator Co. (C.C.A.) 81 F.(2d) 786.

(3) The Butler multi-jaw chuck type hose coupler is not a patentable improvement over the multi-type hose coupler of the prior art. As bearing upon this issue, it contends that the evidence does not support the finding of validity because the Butler hose coupler as described by Butler both in Figure 2 and in his claim never went into commercial use. It likewise argues that extensive use where the trade was so dominated by Stewart-Warner is not persuasive of validity.

The importance of the suit and the effect of the Bassick opinion upon the whole field of patent law make it impossible for us to dispose of the case in an opinion of desirable and satisfactory brevity.

While going no further than is necessary to defeat the patent in the present case, the conclusion from appellant's brief is unavoidable, that Bassick Mfg. Co. v. R. M. Hollingshead, supra, revolutionized the law of patents and repudiated the position of courts, including many decisions in this circuit, long accepted as the law in patent cases. This revolutionary concept was accepted and applied by the District Court (in

Pennsylvania) in Stewart-Warner v. Universal Co., 15 F.Supp. 410.

The Bassick opinion, while dealing with another patent, is more persuasive in this case, because the patent in issue here deals with some of the same old elements of a combination as were described in the Gullborg' patent, the validity and infringement of which were the subject matter of the Bassick Mfg. Co. v. R. M. Hollingshead opinion.

The Gullborg patent had been the subject of much litigation, as pointed out in the opinion, and it dealt, as here with (1) a type of pin fitting, (2) a grease gun, (3) a connecting hose, and (4) a type of coupler.

While it is, of course, conceded that every opinion must be read in the light of the facts to which it applies, yet there are cases where the differences in the facts are so inconsequential, so immaterial, that the opinion must be accepted as authoritative and controlling.

The uppermost question in this case is the controlling effect of the Bassick Mfg. Co. v. R. M. Hollingshead opinion, supra. We are not disposed to limit it in order to bring about an avoidance of any new principle it may announce. Nor are we inclined to give it an effect which was not intended, if it does not follow from a fair construction of its language.

The novel proposition which appellant seeks to apply to the present case is to be found in the language on pages 424, 425, of 298 U.S., 56 S.Ct. 787, 791, 80 L.Ed. 1251. There it was said:

"It is plain that Gullborg invented improvements of two of the mechanical elements of an old combination consisting of grease pump, hose, hose-coupler, and a grease cup or pin fitting. First, he contrived an improved pin fitting. This he patented as such. No. 1,307,733. Secondly, he invented an improved form of coupler to be attached to the end of the hose leading from the pump to the fitting. Instead of patenting this, as he did the pin fitting, he claimed a combination of pump, hose-coupler, and pin fitting, and embodied in the combination his improved form of coupler. No. 1,307,734, the patent in suit; claims 1–6, 8, and ·10. He further claimed the combination between his patented pin fitting and any form of grease gun whether that claimed in his patent or unpatented and old in the art. Claims 14 and 15. *The question then is whether, by this* *method, the patentee, by improving one element of an old combination whose construction and operation is otherwise unchanged, may, in effect, repatent the old combination by reclaiming it with the improved element substituted for the old element.* That this cannot be done is shown by numerous cases in this and other federal courts."

The paragraph of the opinion which follows the quotation serves as a modifier of the strict letter of the rule thus announced. There, the court says:

"Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U.S. 301, 325, 29 S.Ct. 495, 53 L.Ed. 805, on which the respondent relies, is not in point. There the patent was a pioneer patent and the combination was of elements which were novel and neither of which possessed utility without the other. Each element was necessary to the operation of the other. The invention did not, as here, consist of the mere improvement of one element of an old combination."

If the court announced a rule in the Bassick Case as contended by appellant's counsel, or if all of its implications (the substitution of a new element for an old element does not afford the basis of a valid patent) be accepted as the present law respecting the validity of patents then Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U.S. 301, 29 S.Ct. 495, 53 L.Ed. 805, is overruled. However, instead of stating that the Leeds & Catlin opinion is overruled, the court distinguished it and thereby impliedly recognized the soundness of the rule there announced.

Until and unless there is an express repudiation of the Leeds & Catlin Co. v. Victor Talking Machine Co. Case, we can not accept the Bassick Mfg. Co. v. R. M. Hollingshead opinion as being inconsistent with the views stated in the former opinion. In other words, we must apply to the instant case the rules of law which govern and apply the tests which have long been applied to determine whether the Butler combination is a patentable invention.

■ In dealing with product patents and their validity it might be observed that the word "combination" is somewhat unfortunate. A combination contemplates a plurality of units, yet patentable invention can only reside in a combination when it (the combination) is *considered as a unit.* For convenience's sake, courts speak of elements in a combination as units in and of them-

selves. It is only for the sake of convenience that reference is made to such *elements* as 1, 2, 3, 4, and 5. Each and every valid claim of a patent covers a *unit*, although in a combination claim the unit may have five parts or elements. When we so consider a claim it is clear that one unit must differ from another unit if one element, say element three in one combination is different from element three in another combination. To illustrate: If one mixes five different colored paints in stated proportions, he would have a product which might be denominated X. X must be viewed as a unit. If the same individual mixed in the same proportions five different colored paints, four of which were similar to the ones in the first combination but one was different, the final product would not be the same. In testing the validity of any machine or product patent, then, whether it be what is commonly called a combination, or a single, a noncomposite substance, the following propositions may be accepted as sound:

■ 1. All the elements may be old but if they have never appeared together in combination and they co-act so as to avoid the charge of aggregation, the unit *may* constitute a valid claim of a patent.

■ 2. Where a combination consists of five elements—1, 2, 3, 4, and 5—and the inventor uses four old elements—1, 2, 3, and 5,—in the same way and for same purpose as in the previous combination, but substitutes a new element 4 for old element 4 of the old combination and obtains desirable results, the new combination may be the subject of a valid claim. It is not anticipated by the previous combination.

■ 3. Likewise, one may substitute for element 4 an old and well-known element but which has never been used in combination with elements 1, 2, 3, and 5, and these elements being presented in the new combination for the first time may be the subject of a valid patent.

In stating these propositions, we have used the word *"may"* for there are other factors to be considered in determining patentability. For instance, the novelty may not be patentable. The advance may represent the skill of the artisan or the mechanic, not the genius of the inventor. Perhaps it would be better to say that the objection that the combination is lacking in novelty is not sound under the conditions enumerated.

■ Equally clear is the law which denies to anyone the right to *re*patent an old combination.

■ Accepting the foregoing principles as sound and applying them to the instant case, we have no difficulty in distinguishing any of the prior art. Nor are we troubled by the decision in the Bassick Case. The Butler coupling member and his nipple head are novel. Their structures are clearly distinguishable from the prior art. Whether the other mentioned elements are old is immaterial.

■ The only validity questions left relate to combination as distinguished from aggregation and the character of the discovery—whether it marks patentable novelty or mechanical skill. In passing, it might be observed that if a new product is found to be patentably novel, it is immaterial whether said patentable novelty is of the pioneer type or "the mere improvement type" of invention.

Appellant also relies upon the Bassick Case as authority for its contention that contributory infringement is not disclosed upon a showing that it furnished nipples and grease guns, even though made in such a way as to be used as an element in the Butler combination.

The last paragraph of the Bassick opinion is cited in support of appellant's position. It reads as follows:

"We are of the opinion that the owner of the patents cannot extend the monopoly of its patent for a pin fitting to preclude the use therewith of any grease gun not embodying the improvement in the coupling device evidenced by the patent in suit; and cannot extend the monopoly of the combination patent in suit to prevent the use of a pin fitting which does not infringe the fitting patent, 1,307,733, with a gun having a coupler such as that claimed in the patent in suit."

We accept, of course, without question this opinion as applied to the facts in the case that was before the Supreme Court.

In the instant case, Butler does not seek to extend the monopoly of a patent for a pin fitting or to preclude the use of a grease gun in any apparatus not embodying the improvement described in the patent.

Two questions are determinative: First, did Butler set forth a valid patentable combination when he wrote his claim No. 2? Second, did the sale of a headed nipple or a

lubricant compressor made for the sole purpose of being used in connection with the apparatus made according to the Butler patent, constitute infringement?

**■■■** *Combination or Aggregation.* As we view claim 2 of the Butler patent, it spells combination, not aggregation. It is not the names of the various parts that determine this question. If there be coaction of elements so as to make a single unitary structure, we have a combination. The nipple head may be a non-composite apparatus. It may be the subject of a valid patent claim. Likewise, it may be part of a combination.

**■■■** In the instant case, it is conceded that the headed nipple was not patented. More, it is not patentable. It will be assumed that it was old. Nevertheless, if it is an element in an otherwise valid combination (due to the novel coupling method), it is a unit of said combination and a third party supplying it, if other necessary facts are shown, may thereby infringe.

Whether the supplier of headed nipples or other elements of the combination set forth in claim 2 is a contributory infringer depends first on whether the element supplied is a part of a valid combination (as distinguished from an aggregation), and second, on whether the producer so constructs it that it can be said that it was knowingly made with the intention that it would be used in connection with the patented combination.

**■■■** There is an exception to this statement—If an element of a patented combination in the very nature of its use wears out and a new one is supplied, it may be furnished without the producer's infringing. Heyer v. Duplicator Mfg. Co., 263 U.S. 100, 44 S.Ct. 31, 68 L.Ed. 189; Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U. S. 325, 29 S.Ct. 503, 53 L.Ed. 816. But, where the intent is present, as here, to supply separate units of a patented combination and not as a renewal of a worn out part, contributory infringement is disclosed.

The findings of the District Court on this question respecting the dimensions of appellant's headed nipple clearly show an intention to make parts which could only be used in connection with the patented combination. If, then, the Butler claim No. 2 disclosed a valid combination, infringement was shown.

**■■■** In dealing with this subject of contributory infringement, it might be observed that we are dealing with a phase of the general subject of torts. An infringer is a tort feasor. A contributory infringer is one whose action contributes to the infringement.

**■■■** Because of the statute, the owner of a patent is entitled to exclude others from making, selling, or using the patented product. Violation of any of these rights makes the violator a tort feasor, an infringer. Making, buying or selling a non-patented article is not of itself infringement. It only becomes so when said maker, seller or user does so knowing that the non-patented element is to be used in connection with other elements in a valid combination covered by a valid patent. This is the doctrine of contributory infringement.

In the instant case, the court has made findings, and the facts leave no doubt as to the soundness of such findings, to the effect that the non-patented parts made by appellant were not only intended for use in connection with Butler's patented combination but they could hardly be used otherwise. The size and dimensions of the fittings most conclusively demonstrate this fact.

It might be asserted that appellant did not infringe when it *manufactured* one element of the product for it could have been sold to one who would use it other than in the Butler patent combination. However, when it appears that such products were made by the appellant and sold to garages and it further appears that the fittings were of such measurement as to preclude their use except on appellee's patented apparatus, contributory infringement both in selling and in using is established.

To establish contributory infringement the following facts must appear: (1) a valid patent; (2) ordinarily in the case of a product patent covering a combination; (3) the alleged infringer must make or supply one or more of the elements of the combination with the knowledge and intention that the same is to be used in the patented combination.

Contributory infringement is the outgrowth or result of the application of the following legal propositions:

(1) A patentable combination is a unit in the contemplation of the law.

(2) Some elements of the combination may be old and others new, or all old, or all new.

(3) One who makes, sells or uses the combination without permission of the patentee is an infringer.

(4) One may be a contributory infringer although he makes, sells or uses an element that is old and not covered or coverable by a patent.

(5) When the manufacturer makes, uses or sells an unpatented (an old) element, he becomes a contributory infringer only when the element is knowingly made, sold or to be used as a part of a patentable combination without patentee's express or implied consent.

(6) Implied consent exists when in the ordinary use of the patentable combination one element constantly and frequently wears out and must be replaced. Heyer v. Duplicator Mfg. Co., supra. Whether there is a consent is often a fact issue, but not involved in the instant suit.

■ In the last analysis this question of contributory infringement in the instant suit must be determined by the existence or absence of a valid combination wherein one of the essential elements was a product made by appellant. If the elements do not spell a combination, but are merely an aggregation, there is of course no contributory infringement.

For obviously, infringement can exist only when there is a valid patent. No valid patent can cover a group of elements which are correctly termed an aggregation and which do not conform to the correct legal definition of a combination. There is a valid combination only when the element—headed nipple—co-acts with the lubricant compressor and the coupling member. If two of these elements do not co-act and the third element does not likewise co-act with one of the other two members, we do not have a case of valid combination.

Doubt over this issue can only arise when one of the elements may in itself serve a multiple of purposes. It may be used outside the combination of the patent. If so, its use is valid and legitimate. The determining fact issue is the intent and the purpose it serves, and was intended to serve when made or sold. If made, sold or used as an intended element in the combination which is the basis of the patent claim, it is a case of contributory infringement, otherwise not.

In disposing of the defense of aggregation, we have accepted the rather common meaning of that word and, for the purpose of the argument only, assumed it to be a valid defense in patent cases when established. We have adopted this meaning for the purpose of the argument only, for otherwise we would hesitate before accepting it.

In our opinion the defense of aggregation is considerably overworked. The term "aggregation" is usually preceded by the word "mere" and describes a group of elements which fall far short of invention in the user's opinion. It is a generic term used quite loosely to define various structures which fail to embody patentable discoveries.

To illustrate, it is used when a mechanism with a series of independent units which perform their functions separately and uninfluenced by the action of any other unit is being considered. In other cases, it may be adopted when a mechanism is composed of numerous units, but their selection did not call for the exercise of the inventive faculty. In such a case, the discovery may approach but does not attain the high status of invention.

■ We believe the better view is to accept the term "aggregation," if used at all, as defining a phase of the general term "non-invention." When claims are considered which are composed of a plurality of elements and their individual or collective selection fails to evidence the exercise of inventive faculty, it is of course not a patentable discovery regardless of whether coaction of elements is present or absent. On the other hand, an inventive concept may reside in the selection of a part or parts of numerous old elements. If the selection is unusual and a hitherto pressing unsolved problem is thereby overcome, it answers the tests of the statute.

■ Invention may be evidenced by the modifying coaction of the elements. That is, the coaction may furnish the satisfactory evidence of the patentability of the discovery. It is hardly logical, however, to say without it (coaction) there can be no invention.

It is one who "has invented or discovered any new and useful art, machine, manufacture, or composition of matter, or any new or useful improvements thereof, etc.," who is, under the statute, entitled to the name inventor, and under prescribed circumstances is entitled to a patent which will protect his invention. The term "aggregation" is not used. It has been adopted by the legal profession as descriptive of a machine, or composition of matter, etc., that falls short of invention usually because the elements of the composition do not coact.

Courts, too, have recognized it as applicable when the machine or composition of matter falls short of invention, because it manifests the skill of the mechanic rather than the genius of the inventor. This has led to emphasis on the term "coaction" of elements when applied to said composition or machine.

When among the group of elements there is correlation or co-ordination of elements which mutually contribute to the same result, there may be invention, notwithstanding there are many decisions which have arbitrarily announced that patentable discoveries are not present unless there is coaction of elements which results in a new or better product.

We are convinced that where there is correlation, cooperation, or co-ordination resulting in mutuality of achievement of a common purpose and contributing to accomplish a desired result, a patentable combination may well be present. Nor is it proper to say that the correlation or cooperation depends on each element's affecting each of the other elements.

■ In short, in attempting to restrict aggregation to its proper field, it might be said that a combination is present if there be correlation or co-ordination of elements which mutually contributes to the accomplishment of some result and there need be no interdependency in the sense of one element being dependent on the others for functioning.

We are inclined to go still further and question the wisdom of necessitating the presence of a coaction of parts to constitute a valid combination. True, absence or presence of coaction may bear upon the character of the skill required to solve the problem. It is entirely possible to conceive of a case where the selection of the elements which are to act together to produce a desirable or advantageous result, would invoke the exercise of the inventive faculty. While this view may not harmonize with many of the decisions, and it is not applied in the instant case, it seems to us the more logical one. For when we attempt to distinguish between inventive faculty and the skill of the mechanic, we must admit that the former often finds expression in the *selection* of the particular element and it is the *selection* of elements that solved the problem, improved the product, or brought about the desired economies in production costs. Its cooperation with the other elements may be very limited, —in fact, limited to mutuality of effect **or** functioning to a common purpose.

*Patentable Novelty of the Butler Apparatus.* Appellant argues as one of its three major grounds for reversal of the decree that the advance or improvement which Butler made over the prior art did not constitute invention, but merely evidenced the skill of a mechanic confronted by an ordinary mechanical problem.

Upon this issue the District Court found squarely against the appellant and in its opinion pointed to the differences between the prior art structures and the Butler apparatus.

We are not convinced that the discovery belongs to the pioneer class. It was an improvement, but not an outstanding advance. Whether that improvement was such as to justify the issuance of a patent may well be and is seriously debated.

■ We are not impressed by the evidence of wide and popular acceptance of the patented apparatus which is so controlling in doubtful cases. Wahl Clipper Corp. v. Andis Clipper Co. (C.C.A.) 66 F.(2d) 162.

Appellee occupies such a position in this lubricating field that any lubricating system it might offer to the garages and automobile manufacturers would result in enormous sales of parts. There is no doubt but that the figures appearing in the court's findings, standing alone, are impressive. A sale of 280,000,000 fitting parts in three years, by any company at any time, is quite startling. They would be more impressive if we knew how many parts were sold under the Zerk patent or under the Gullborg patent, both owned by appellee. The number of automobiles in the United States and the number of parts necessary to supply all of them are both enormous. A company, like the appellee, is apparently able to have its product made part of the standard equipment of most automobile companies, and therefor would naturally sell millions of parts of a lubricating system throughout the entire United States. It is for this reason that we have not allowed the sale figures to influence our judgment on this issue of validity of the patent.

It is only after observation of the various lubricating systems that we have come to the same conclusion as was reached by the District Court. If the advance which Butler made was merely the solution of a mechanical problem, we are at a loss to understand why that solution was so long delayed. Holding one part of the lubricating system against another while pressure was applied and grease squirted in all directions, or mak-

ing the connection by the pin and slot or bayonet type while crawling under cars and reaching between spokes of a wheel, was so unsatisfactory as compared to the Butler method that the delay in producing this new method of connection is explainable only upon the theory that the problem was beyond the solution of the mechanic skilled in the art.

What was the problem which confronted the maker of lubricating systems? First and foremost was the need of high pressure apparatus. The pressure had increased in the passing years. First 500 to 750 pounds was considered high, then 1500 to 2000 pounds. The Butler system permits of pressure up to 7500 pounds. It is apparent that high pressure was extremely desirable. The difficulty to be overcome in the making of a high pressure system was in the connection between the coupler and the pin head. Butler's solution was most satisfactory because the higher the pressure, the tighter the connection—the better the fitting.

Another problem which confronted the manufacturer was easy connection. Crawling under the car or reaching points rather inaccessible was unsatisfactory.

The trial judge found, and there is testimony to support this position, that in the lubricating field the method adopted had never been used before. It was novel in the lubricating field. It may not have been wholly new in the entire field of mechanics, but it was novel in this particular field. Its conception or its selection, under all the circumstances, we conclude was invention and entitled to the protection of a patent.

Appellant argues, as an additional ground for reversal, that claim 2 of the Butler patent and Fig. 2 of the drawings accompanying the same do not cover its accused nipple. It likewise argues that appellee's "Alemite Hydraulic" coupler is not the coupler of the Butler patent.

The District Court found squarely against appellant on this issue.

The question has been elaborately argued both on the oral argument and in the brief. To reproduce the drawings and set forth the positions of the two sides would almost double the length of this opinion, and we fear we would not add much to the statement of our conclusions respecting these conflicting positions.

The question is not whether Fig. 2 of the drawings fully represents the concept of the inventor. Figures which accompany the patents are often presented merely to elucidate the thought expressed in the specifications. Their study is decidedly helpful in most cases, but it can hardly be expected that all of the possible variations in structures will be set forth in specifications or drawings. Frequently the improved type is described in detail. True, there are instances where specificity is necessary in order to distinguish the invention from the prior art. More frequently however, it is the principle of operation which is being illustrated rather than an effort to confine the invention to the exact figures shown in drawings.

This seems to have been the thought of Judge Lindley when he said:

"The Alemite Hydraulic System (appellee's) comprises the combination of elements set forth in claim 2 of the Butler patent. * * * There is nothing in the Butler patent which requires the use of spring fingers which can yield a substantial amount. * * * The Alemite Hydraulic coupler will grip and form a sealed combination with a Lincoln Kleenseal fitting as well as with an Alemite Hydraulic fitting and claim 2 of the Butler patent described one combination as well as the other."

He further stated:

"The mechanism embodied in the means by which the jaws are compressed about the nipple of the Alemite Hydraulic system, is identical in its mechanical principles with that disclosed in the Butler patent. *It is a simple equivalent involving a mere reversal of parts.* The Alemite Hydraulic system comprises the combination of elements set forth in claim 2 of the Butler patent."

Our conclusion is that such departures from the Butler patent as were made in the commercial structures were nevertheless the equivalent of the Butler claim, and they embodied the mechanical principles which were described in the Butler patent. In other words, we agree with the District Court that appellee's Alemite Hydraulic system was an embodiment of claim 2 of the Butler patent.

The decree is

Affirmed.