## ALEMITE CO. v. JIFFY LUBRICATOR CO.

## JIFFY LUBRICATOR CO. v. ALEMITE CO.

### Nos. 13835, 13840.

United States Court of Appeals
Eighth Circuit.

Aug. 17, 1949.

Rehearing Denied Oct. 31, 1949.

Herbert G. Nilles, Fargo, N. D., and Casper W. Ooms, Chicago, Ill. (John D. Black, Elwood Hansmann and Thomas F. McWilliams, Chicago, Ill. on the briefs), for Alemite Co.

Leonard L. Kalish, Philadelphia, Pa. (C. A. Taney, Jr., Minneapolis, Minn., on the briefs), for Jiffy Lubricator Co.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

The action out of which these appeals arose was brought by the Jiffy Lubricator Company, as plaintiff, against The Alemite Company, as defendant, in 1938.[1] The defendant was charged with having infringed the plaintiff's patent No. 2,040,177 issued to it on May 12, 1936, upon an application filed by August Johnson and John S. Johnson on October 30, 1930. The patent is for a "Hydraulic Lubricating Connection" for greasing the bearings of "motor vehicles and the like." The alleged infringing devices were "Alemite hydraulic couplers" manufactured by the Stewart-

---

[1] The Stewart-Warner Corporation and the Alemite Corporation, its subsidiary, were also originally named as defendants, but were, by order of the District Court, eliminated from the case with respect to the claim of patent infringement involved in these appeals.

Warner Corporation, of Chicago, or one of its subsidiaries, and sold by the defendant. The defendant denied infringement, denied that the Johnsons were the first inventors of the coupler disclosed by the patent in suit, and asserted that the patent was void because of anticipation and lack of invention. The issues, which involved all of the nine claims of the patent in suit except claim 2,[2] were tried to a jury, which returned a verdict for the plaintiff. A motion of the defendant for a directed verdict had been denied by the court. After verdict, the defendant moved for judgment notwithstanding. That motion was denied. The plaintiff moved the court to increase the damages awarded by the jury, as authorized by § 67 of Title 35 U.S.C.A., and to allow the plaintiff attorneys' fees under § 70, Title 35 U.S.C.A. as amended. The court denied the plaintiff's motion. Judgment was entered for the amount of damages allowed by the jury, plus $12,000 costs and $468.73 interest, a total of $23,840.53. These appeals followed.

The defendant, in its appeal, challenges the validity of the judgment and the fairness of the trial. The plaintiff, in its appeal, charges the court with an abuse of discretion in not increasing the jury's award and in not adding attorneys' fees to the judgment.

The vital question for decision is, we think, whether the patent in suit (referred to as the Johnson patent) is clearly invalid for lack of patentable invention over the prior art. If the patent is clearly void, the verdict of the jury is, of course, of no help to the plaintiff and other questions need not be considered.

This controversy purports to be, and is of record, one between two North Dakota corporations. In reality it is mainly between two large manufacturers of lubricating equipment, the Lincoln Engineering Company, of St. Louis, Missouri, which has financed the prosecution of the action for infringement, and the Stewart-Warner Corporation, of Chicago, which makes and markets the "Alemite Hydraulic Coupler," and which has contributed to the defense. The action was brought in the Eighth Circuit, no doubt, because plaintiff's counsel were of the view that the opinion of this Court in Stewart-Warner Corporation v. Jiffy Lubricator Co., 81 F.2d 786, would be helpful to the plaintiff.

We do not propose in this opinion to go into a detailed description of the prior art and the history of greasing equipment for motor vehicles. For approximately thirty years the manufacturers of such vehicles have equipped them with tubular nipples or pin fittings at points

[2] Claim 1, which fairly may be considered as typical of the claims allegedly infringed, reads as follows:

"1. A connector for pressure lubricators comprising a casing having a cylindrical bore terminating at one end in a tapered bore, closure means on the other end having a passage therethrough communicating with the interior of said casing, said passage providing an inlet for lubricant into said cylindrical bore, a hollow piston member slidably received in said casing and adapted to be projected forwardly by the lubricant in said cylindrical bore under pressure developed in said lubricator during its operation and conveyed into said cylindrical bore through said inlet, rigid clamping members on said piston and slidable therewith having portions slidably engaging the tapered portion of said casing for securely clamping a fitting, and sealing means in said hollow piston against which the fitting is adapted to press when held by said clamping bore, a closure for the other end of said casing having a passage communicating with the bore of said casing to convey lubricant thereinto, a hollow piston member in said bore in said casing and movable by the pressure of lubricant in said bore developed in said lubricator during the operation thereof, rigid clamping members having portions arranged between said piston member and the casing, inwardly projecting clamping portions on said members, said members having surfaces slidably engaging the tapered wall of the casing whereby said clamping portions are moved radially inward when the piston member is moved toward the tapered end of said casing for clamping the end of a fitting when inserted in the end of said casing, and a sealing means in said hollow member against which the end of the fitting is adapted to press, said means comprising a flexible washer secured in said hollow piston adapted to be pressed against said fitting by the pressure of the lubricant being dispensed."

where greasing was necessary. The nipples are of a type which can be connected by a coupler with a grease gun capable of forcing grease, under high pressure, to the bearing to be lubricated. The patent which revolutionized the method of greasing the bearings of automobiles was the Gullborg patent No. 1,307,734, issued in 1919, for a combination consisting of a pin fitting, a grease pump or grease gun, a hose to connect the two, and a bayonet type of coupler for manually connecting the hose to the pin fitting. All of the elements of the combination were old in the art, the only novel features being the means provided by Gullborg for preventing the exudation of grease upon release of the grease pressure and the disconnection of the coupler, and his use of the transverse pin of the pin fitting as the base for the spring which effected a closure of the orifice of the fitting after the greasing operation was completed. The validity of the Gullborg patent as to certain of its claims was sustained by the Circuit Court of Appeals of the Sixth Circuit in Lyman Manufacturing Co. v. Bassick Manufacturing Co., 1927, 18 F.2d 29.

The owner of the Gullborg patent took the position that anyone making, using or selling any kind of grease gun to be connected with the Gullborg pin fitting, or making, using or selling a pin fitting to be connected with the Gullborg coupler, was guilty of contributory infringement. The market for grease guns, couplers and pin fittings was large and lucrative. Much patent litigation ensued. The question of contributory infringement reached the Supreme Court in 1935 and was decided on May 18, 1936, in the cases of Bassick Manufacturing Co. v. R. M. Hollingshead Co., and Rogers et al. v. Alemite Corporation, 298 U.S. 415, 56 S.Ct. 787, 80 L.Ed. 1251. The Supreme Court held, in substance, that, since the combination of a grease pump, connecting conduit, coupler, and pin fitting was old in the art, Gullborg could not, by inventing a new and improved type of coupler or pin fitting, claim either of these in combination with the old forms of the other elements so as to exclude the public from the use and sale of the old forms of fittings or grease guns even though these might be used respectively with Gullborg's improved coupler or his improved pin fittings, because, in the combinations claimed, an old-type fitting or an old-type coupler had no novel function over those of the prior art. See Lincoln Engineering Co. v. Stewart-Warner Corporation, 1938, 303 U.S. 545, 547–548, 58 S.Ct. 662, 82 L. Ed. 1008.

It is safe to say that in or about 1930, when the Johnsons devised their so called "Jiffy hydraulic coupler" and applied for the patent in suit, virtually all automobiles were equipped with Gullborg pin fittings, and the makers of grease guns with bayonet type couplers, as well as those who made pin fittings which could be used in Gullborg's combination, were being sued as contributory infringers of Gullborg patent No. 1,307,734. August Johnson and his brother "wanted to get a coupler where we would not have to depend on the pin to hold the coupler on the fitting." What they wanted "to get away from" was "an Alemite [Gullborg] pin connector." This was "on account of all our trouble in these inventions of ours, which was on account of the coupler using a fitting that would hook on a pin." It appears that August Johnson told an automobile mechanic in or about 1928 about making something to do away with the old type of connector so that he (Johnson) would not have to use the pin on the Alemite fitting, and that he thought he could make something that would work like a drill chuck, utilizing the force from the grease gun to grip the fitting during the greasing operation. The mechanic understood what Johnson was talking about, and thought it would work.

The production and sale by the plaintiff of the Jiffy hydraulic coupler was followed by the action of Stewart-Warner Corporation v. Jiffy Lubricator Co., which was considered by this Court on appeal in 81 F.2d 786, decided February 11, 1936. In that case the Jiffy Lubricator Company was charged with the infringement of claim 1 of the Butler patent No. 1,-593,791, issued July 27, 1926, upon an application filed February 19, 1923, claiming a combination of a headed nipple and a

coupler for attachment to the throat of the nipple, for lubricating bearings, especially those of automobiles. The Butler patent disclosed a chuck type of coupler, the fingers or jaws of the chuck being actuated by a piston within a cylinder, "whereby the pressure of the lubricant on said piston will move the piston to forcibly compress said means [the fingers or jaws provided for locking the coupler to the nipple], while the lubricant is passing through said connecting parts." The District Court in that case had held that claim 1 of the Butler patent was valid if the device covered by that claim was limited to its exact form or its clear mechanical equivalents, and that unless it was so limited it would be invalid for lack of novelty over the prior art. This Court affirmed. In its opinion it said, page 791 of 81 F.2d: "Reviewing the prior art, however, we find that it is an old idea to make a chuck whose jaws or gripping elements are segments carried by a cylinder; the segments being drawn together into firm grip upon an object by wedging action between the cylinder and the segments. It is also an old idea to actuate the segments so carried in a cylinder into gripping by wedging action caused by the forward movement of a piston in the cylinder."

While this Court distinguished the Jiffy hydraulic coupler, the accused device in that case, from the device of Butler, and was of the view that the Alemite hydraulic coupler, made by the Stewart-Warner Corporation, did not conform to the Butler patent, the Court did not hold that whatever advance in the art over the Butler coupler was disclosed by the Jiffy hydraulic coupler would amount to patentable invention.

Following our decision in Stewart-Warner Corporation v. Jiffy Lubricator Co., supra, 81 F.2d 786, Judge Lindley, of the District Court of the Northern District of Illinois, considered claim 2 of the Butler patent, No. 1,593,791, in the case of Stewart-Warner Corporation v. Le Vally et al., 15 F.Supp. 571. The contention in that case was that the sale by the Lincoln Engineering Company of the headed nipple of the Butler combination constituted con-

tributory infringement of claim 2 of the Butler patent. Judge Lindley sustained the plaintiff's contention in that regard. He said, page 578 of 15 F.Supp: "Butler was the first to utilize a headed nipple and a compressor as co-operating elements of a combination whereby a grease-tight and mechanically strong connection between compressor and bearing were effected automatically in and by the grease pumping operation of the compressor alone."

He was unable to read into claim 2 of Butler any requirement of springiness or spring fingers which this Court in Stewart-Warner Corporation v. Jiffy Lubricator Co., supra, considered a distinguishing feature of the Butler hydraulic chuck coupler. The Circuit Court of Appeals of the Seventh Circuit affirmed Judge Lindley, in Lincoln Engineering Co. of Illinois v. Stewart-Warner Corporation, 91 F.2d 757. That court concluded, as had Judge Lindley, that the Alemite hydraulic system, consisting of a grease-pressure-operated chuck coupler and a headed pin fitting was an embodiment of claim 2 of the Butler patent. The Supreme Court granted certiorari. In its opinion, Lincoln Engineering Co. v. Stewart-Warner Corporation, 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008, it held the Butler patent void as claiming more than the patentee invented. The Supreme Court said at pages 548–549 of 303 U.S., at page 664, of 58 S.Ct.:

"In its petition for certiorari, and in argument upon the merits, the petitioner insisted that the respondent's commercial form of coupler was not that of the Butler patent; that the Circuit Court of Appeals for the Eighth Circuit Court had so held [Stewart-Warner Corp. v. Jiffy Lubricator Co., 81 F.2d 786], and that the courts below erred in not reaching a similar conclusion. In view of the grounds of our decision we find it unnecessary to pass upon this question.

"The petitioner's principal contention is that our decision in the Rogers case, Rogers v. Alemite Corporation, 298 U.S. 415, 56 S.Ct. 787, 80 L.Ed. 1251, is controlling. We so hold. As has been said, the combination of elements disclosed is old in the art. As the Circuit Court of Ap-

peals held, a headed nipple or fitting connected with the bearing, and to be coupled to the conduit from the grease gun, is old and unpatentable. A compressor or pump for propelling lubricant is old and unpatentable as such. The invention, if any, which Butler made was an improvement in what he styles in his specifications the 'chuck' and in his claim a 'coupling member.' It is not denied that multi-jawed chucks had been used in industry and as couplers in lubricating apparatus. Butler may have devised a patentable improvement in such a chuck in the respect that the multiple jaws in his device are closed over the nipple by the pressure of the grease, but we think he did no more than this. As we said of Gullborg in the Rogers case, having hit upon this improvement he did not patent it as such but attempted to claim it in combination with other old elements which performed no new function in his claimed combination. The patent is therefore void as claiming more than the applicant invented. The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention. * * *"

■ As the Supreme Court and this Court have stated, chucks are old and unpatentable as such. They are universally used in lathe and drill assemblies and can be operated manually or by pressure. Perhaps the oldest form of a chuck is to be found in the carpenter's brace and bit. What the Johnsons did—as we see it—was to substitute for the bayonet type of connecting means of Gullborg, which was old, a chuck type of connecting means, also old. Had Gullborg used either a manually or a pressure operated chuck to fasten his coupler to a grease nipple, it is doubtful if that would have added anything of novelty to the disclosures of his patent. Substituting an old and well known form of coupler for another form of coupler equally well known, did not, in our opinion, require invention, but merely mechanical skill. This Court virtually said as much in the case of Min-A-Max Co.,

Inc., v. Sundholm, 102 F.2d 187, which involved the validity of the Boker patent No. 1,802,700, issued April 28, 1931, for a combination of a pointed tubular nozzle, sharp enough to be inserted into the hole of grease cups (nipples), and the grease cups into which it could be inserted. In other words, Boker, instead of making a connection with the outside of a nipple or pin fitting, showed that what amounted to a tubular nozzle small enough to be inserted into the hole of the pin fitting could be used as a connection between the grease gun and nipple. This Court said in that case, page 188 of 102 F.2d: " * * * The nozzle through which the lubricant is forced from grease pumps into standard grease cup equipment either fit over and fasten to the grease cups or are manually held thrust into them or against them. It seems likely that many of the thousands of handy mechanics in these United States could readily make suitable nozzles for the purpose."

While that language was not necessary to the decision of the case, it was used advisedly. To use means old in the art to clamp a grease nozzle to a grease fitting so as to form a tight connection, does not involve patentable invention. Compare, Cuno Engineering Corp v. Automatic Devices Corp., 314 U.S. 84, 90–92, 62 S.Ct. 37, 86 L.Ed. 58, and Ford Motor Co. v. Parks & Bohne, Inc., 8 Cir., 21 F.2d 943, 949–950.

Implications favorable to the plaintiff which might, perhaps, be drawn from some of the statements of this Court in Stewart-Warner Corporation v. Jiffy Lubricator Co., supra, 81 F.2d 786, must be considered in the light of the more recent decisions of the Supreme Court raising the standards of originality necessary to sustain a patent. That such standards have been raised has been expressly recognized by the Circuit Court of Appeals of the Second Circuit in Picard v. United Aircraft Corporation, 128 F.2d 632, 636, certiorari denied 317 U.S. 651, 63 S.Ct. 46, 87 L.Ed. 524, and by this Court in Frank Adam Electric Co. v. Colt's Patent Fire Arms Mfg. Co., 8 Cir., 148 F.2d 497, 502–503, and Koochook Co., Inc., v. Barrett, 8 Cir., 158 F.2d 463, 466–

467. What was said in those cases need not be repeated. The present attitude of the Supreme Court toward claimed patentable improvements may be gathered from Cuno Engineering Corp. v. Automatic Devices Corp., supra, 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58, and the more recent cases of Jungersen v. Ostby & Barton Co., 335 U.S. 560, 69 S.Ct. 269, and Mandel Brothers, Inc., v. Wallace, 335 U.S. 291, 69 S.Ct. 73.

Since it is our opinion that the evidence, viewed in the aspect most favorable to the plaintiff, does not sustain the conclusion that the Johnsons' contribution to the art of lubrication rose to the level of patentable invention, it is unnecessary to consider other questions.

The judgment appealed from is reversed, and the District Court is directed to enter a judgment dismissing the plaintiff's claim that the patent in suit is valid and infringed.